(No. 28811.—

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, EXR., *vs.* FRANKLIN P. SEVER *et al.*, Appellees.—(ST. LOUIS UNIVERSITY, Intervenor, *et al.*, Appellants.)

*Opinion filed January 23, 1946—Rehearing denied March 14, 1946.*

82

THOMPSON, C.J., dissenting.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, (WEY-MOUTH KIRKLAND, HOWARD ELLIS, WILLIAM H. SYMMES, and BARTLETT S. MARIMON, of counsel,) all of Chicago, for appellant St. Louis University.

LEWIS C. MURTAUGH, trustee, of Chicago, *pro se,* appellant.

THOMAS B. BROWN, and BEACH, FATHCHILD & SCO-FIELD, both of Chicago, for appellees Franklin P. Sever *et al.*

BELL, BOYD & MARSHALL, (THOMAS L. MARSHALL, and SAMUEL M. MITCHELL, of counsel,) all of Chicago, for appellee The Washington University.

Mr. JUSTICE MURPHY delivered the opinion of the court:

The Continental Illinois National Bank and Trust Company of Chicago, as executor and trustee of the estate of Henry Edward Sever, deceased, started this action in the superior court of Cook county to obtain a construction of certain paragraphs of the will of said decedent and for directions in reference to certain trust funds. All persons and institutions who appeared on the face of the will to have any interest in the bequests involved were made parties defendant. The public's interest in certain charitable bequests was represented by the Attorneys General of Illinois and Missouri, respectively. Lewis C. Murtaugh was appointed trustee of the interests that persons not in being might possibly acquire in the future. Answers were filed on behalf of some of the defendants, a hearing had, and a decree entered July 7, 1943. There was no appeal from such decree. It contained a reservation of jurisdiction and thereafter further proceedings were had which resulted in another decree being entered June 14, 1944. The appeal to the Appellate Court was from the latter decree. That court reversed such decree and we granted leave to appeal.

The questions raised necessitate a general statement as to the provisions of the will, the changes made in it by two codicils, the issues upon which the first decree was based, and the matters determined by that decree. The claim is made that the decree of July 7, 1943, is *res judicata* of all questions determined by the decree of June 14, 1944.

Testator was born in Missouri but at the time of his death was a resident of Chicago. He died April 8, 1941. He had no lineal descendants and his wife predeceased him by about twenty days. His will, dated June 5, 1925, and

two codicils, dated November 9, 1937, and March 28, 1941, respectively, were admitted to probate May 22, 1941.

The will and codicils are long and somewhat involved but since the contest is as to the disposition of a residue, it will not be necessary to set forth the details and conditions upon which many of the bequests were to become effective. A few general statements will suffice to show testator's general plan of disposition of his property.

By the will testator's wife was to receive a bequest of $25,000 which was in the nature of an award. In addition, she was bequeathed $100,000 outright. A brother was to receive $20,000. The residuum of the estate was to be held in trust by testator's wife and the income was payable to her for life. The trust was to terminate upon her death and the fund be distributed. About $63,000 was bequeathed to two of testator's wife's sisters and his collateral kindred. The sum of $5000 was to be set aside and used in the establishment of a trust fund, the income of which was to go to the maintenance and upkeep of Rock Creek cemetery located near Hurdland, Missouri, the place where testator's father, mother and other relatives were buried. The sum of $110,000 was to go for the establishment of a library at Kahoka, Missouri, such library to be known as the H. E. Sever Memorial Library. The residuum of the trust fund was to be divided into five parts: one fifth, but not to exceed $50,000, was for a nephew who was the only one of the family remaining to bear the name of Sever; one fifth, also limited to $50,000, was to be divided equally between four nephews and a niece; one fifth, with a limitation of $100,000, was to establish a trust fund for reforestation purposes in Knox county, Missouri, the county in which testator was born; one fifth, but not to exceed $100,000, was to go to the Board of Park Commissioners of Chicago for the erection of a fountain in Jackson Park, to be known as the H. E. Sever Memorial Fountain. The entire remainder of the estate was for the

establishment of a trust fund for the erection and mainte-
nance of a Christian Science benevolent home in Chicago.

The codicil of November 9, 1937, increased certain be-
quests and reduced others. By it testator's wife was to
receive a total of $225,000, the brother named in the orig-
inal will was to receive an increase of $5000. Other be-
quests in favor of nieces and nephews were added, totaling
$20,000. The provision in the will which created a trust
of the residuum, with the testator's wife as trustee, was
not amended but its distribution after her death was ma-
terially changed by the codicil of November 9, 1937. Tes-
tator's brother, nephews, nieces and his wife's sister were
to receive from such fund a total of $85,000; one bequest
of $3000 was reduced to $500; three personal bequests,
none of which were mentioned in the original will, were
added, totaling $5000. The First Church of Christ Sci-
entist of Chicago was bequeathed $2000. The bequest in
the will of a one-fifth of the residue to the nephew who
bore the name of Sever, was reduced to $25,000 and a
similar reduction was made in the bequests to the other
nephews and nieces named in the original will. The prin-
cipal of the trust to be used for reforestation was ex-
tended to include a game refuge, but the amount as stated
in the original will to be used for such purpose remained
unchanged. The bequest of not to exceed $100,000 for a
fountain in Jackson Park was changed to $25,000 to be
used for the purpose of erecting a carillon in Grant Park,
to be known as the Sever Carillon. The trust created by
the will for the erection of a Christian Science benevolent
home in Chicago was withdrawn and $25,000 was given to
the Board of Trustees of the Mother Church, the First
Church of Christ Scientist of Boston. It will be noted
that the gift of $25,000 for the erection of a carillon and
the bequest of $25,000 to the Trustees of the Mother Church
were renounced by the recipients.

Paragraph F of article 11 of the codicil of November 9, 1937, disposes of the remainder of the estate, and is as follows:

"The Residuary of My Estate, shall be used ·for the purpose of establishing an Educational Institution in my native state, the state of Missouri, this Institution to bear my name. ·It is my thought that a Corporation shall be formed and Board of Directors named and this Fund be turned over to them to administer but not until the location has been selected and the building erected and equipped, ready for use. This location in the state is left to the discretion of my Trustee, to be determined by the inducements that may be offered and as the need may appear. . This Educational Institution should be along the lines of Technology with the view of better equipping young men and women for performing the world's work. The Boston "Tech" of Boston or Rice Institute of Houston, Texas, will exemplify the sort of Institution I have in mind. The town of Kirksville, Missouri may be considered, this being the town in which myself and other members of my family received our early educational training. Should the State of Missouri see fit to táke over and operate such Institution, my Trustees are authorized to turn over the same to the State, if in their judgment this will further the purpose for. which the Institution is established. Much of my early life was spent in educational work. I have always felt a deep interest in education and I am hopeful of making my estate of sufficient size that after the various bequests have been distributed, a worth while Memorial Educational Institution may be established.

"Should the residuary of my estate not amount to a minimum of One Hundred Thousand ($100,000.00) Dollars, my Trustees are instructed to establish the Residuary of my estate as a Trust Fund to be invested and reinvested until it shall reach an amount of at least One Hundred Thousand ($100,000.00) Dollars which amount I would

consider the minimum necessary to establish a worth while Institution of Learning."

It is estimated that such residuary fund is approximately $1,250,000.

The second codicil, executed after the death of testator's wife, noted her passing and directed that the bequests provided for her should become a part of the residuary estate. Plaintiff in this case was named as executor and trustee to succeed the executor and trustee named in the original will.

Plaintiff's complaint contained allegations that questions had arisen in reference to (a) the trust fund for the upkeep of the Rock Creek Cemetery; (b) the bequest for the erection of a library at Kahoka; (c) the trust fund for the establishment of a forest preserve and game refuge in Knox county, Missouri, and (d) the disposition of the residuum under paragraph F of article 11 of the codicil of November 9, 1937. The prayer was for a construction of all of the provisions which referred to the bequests mentioned. The prayer as to paragraph F was that the court aid plaintiff in the performance of its duties with respect to the educational institution provided for by said paragraph, to determine whether a corporation should be organized for such educational institution before the site was selected and a building erected thereon, that it receive the assistance of the court as to the amount to be expended for the building, the amount for equipment and the amount that should be retained for endowment purposes. Plaintiff asked the court to direct it as to what inducements and needs should be considered in determining the location of the institution and to advise it "where said institution should be located and whether it should be a separate institution or whether it may be combined with or be a part of another institution, and may advise as to the nature, types and kinds of technology to be taught." Further requests for instruction related to the investment and man-

agement of the fund pending the establishment of the institution. The concluding paragraph of the prayer was that the court retain jurisdiction of the parties to adjudicate any and all controversies that might arise concerning any of the trust property or the duties of the trustee.

The decree of July 7, 1943, contained a finding that the bequests to the several individual beneficiaries had been paid. The provisions of the will and codicils in reference to the Rock Creek cemetery fund, the library fund, the forest preserve and game refuge, bequests to the park district of Chicago, and the bequest to the trustees of the First Church of Christ Scientist of the Mother Church of Boston, were construed and directions given plaintiff as to their payment. As stated, that decree was not appealed from and the bequests to the individual beneficiaries and the charitable trusts mentioned are not involved on this appeal.

The decree contained a finding as to the substance of paragraph F of article 11 herein set forth; that plaintiff was trustee of the fund therein mentioned and that the location of the educational institution in Missouri "is left to the discretion of said Trustee, to be determined by the inducements that may be offered and as the need may appear, and that said educational institution may be an institution already existing and operating in the State of Missouri." It contained a further finding that due to the shortage of building materials created by war conditions it was and had been impracticable since testator's death to erect buildings for such educational institution and that such scarcity of material might continue for some years. It contained a further statement that the trustee was not authorized to turn over the trust fund until a location had been selected and buildings provided, and directed the trustee in the meantime to invest and reinvest the funds. It found that jurisdiction should be reserved for the purpose of hearing further evidence with respect to the location

of the proposed educational institution and to receive and consider inducements for locating such institution at different places in Missouri, and to assist the trustee "in the selection of a location for such educational institution."

The ordering part of the decree directed that the location of the educational institution provided for in paragraph F of article 11 of the first codicil was "left to the discretion of said Trustee, to be determined by the inducements that may be offered and as the need may appear; that said educational institution may be an institution already existing and operating in the State of Missouri." It contained findings excusing the trustee's delay in establishing the institution, caused by the shortage of material, and directed the management of the fund in accordance with the findings previously mentioned. It concluded with the order "that this Court reserves jurisdiction of this cause for the purpose of hearing further evidence with respect to the location of said proposed educational institution, and for the purpose of hearing and considering inducements for locating said educational institution at different places in the State of Missouri, and for the purpose of assisting said Trustee in the selection of a location for such educational institution; that this Court hereby appoints Mark W. Lowell, Walter P. Murphy and William Zingheim to act as a Committee to consider the applications for the use of the residue of the estate of Henry Edwin Sever, deceased, that have been made and that may hereafter be made, and said Committee shall advise this Court as to its recommendations with reference to such applications."

Nothing further occurred pertinent to this inquiry, after the decree of July 7, 1943, until March 27, 1944, when two of the "Committee" named in the July 7 decree presented a report to the chancellor recommending the qualifications of St. Louis University. A minority report by the other member of the "Committee" recommended

Washington University.  Both universities are located in St. Louis, Missouri.

On April 18, 1944, the trustee reported to the court that it had exercised the discretion vested in it by the will and codicils and had selected Washington University of St. Louis, Missouri, to receive the fund and to provide for the kind of educational instruction directed in the will.  On the day that such report was filed, Washington University obtained leave to intervene and filed a motion to strike the report of the "Committee."  On May 5, following, St. Louis University was granted leave to intervene.  Thereafter, the litigation was in reference to which of the two intervenors should be the recipient of the benefits of the trust fund.  A hearing was had at which the majority and minority reports of the "Committee" were introduced in evidence.  A large amount of other evidence was heard pertaining to the equipment and qualifications of each of the universities to carry out the provisions of the will.  The decree of June 14, 1944, referred to the decree of July 7, 1943, as an interlocutory order.  It contained a finding that paragraph F of article 11 of the first codicil evidenced an intent of the testator to have the residuary fund applied to the establishment of a school of technology, the same to be located in Missouri and to bear testator's name.  It was stated that it was testator's intent that it should be an independent institution, separate from and not attached to any other institution of learning.  It contained a finding that it was not only inexpedient and impracticable to carry out such intention but that the amount of money available for such purpose made it impossible to establish a school such as was intended by testator, and that the testator "had in mind an overall charitable intent to create a valid charitable trust of the rest, residue and remainder of his estate for technological educational purposes."  The decree recited that to give effect to the overall charitable intent of the testator it was necessary to apply the *cy pres* doctrine.

There were many findings of fact embodying the conclusions of the majority of the "Committee" and based in part upon other evidence, the substance of which findings was to the effect that St. Louis University was especially well located and fully equipped to carry out the purposes of the trust, that it had a strong department of geophysics and would organize a new school in connection with its other educational instruction as a branch to be known and operated as Sever Institute of Geophysical Technology. It contained the specific finding that, in view of the fact that the charitable trust fund created by paragraph F of article 11 "can only be diverted to another educational use by the Court through and by virtue of its power to execute this charitable trust *cy pres,* the Trustee is without discretion in the matter of selecting an existing college or university to receive the residuary estate of the Testator or the income therefrom; that the selection of Washington University by the Trustee as the beneficiary of the residuary estate of the Testator is of no force and effect." It was ordered that the trust fund be held in perpetuity by plaintiff as a charitable trust fund for the exclusive use and benefit of the Sever Institute of Geophysical Technology to be established as an autonomous school of St. Louis University.

As stated, the decree of June 14, 1944, was reversed by the Appellate Court. (324 Ill. App. 613.) St. Louis University and Lewis C. Murtaugh, as trustee, filed separate petitions for leave to appeal to this court. Answers were filed by Washington University and a group of the beneficiaries named in the will whose bequests are not involved on this appeal. Both petitions were allowed. It is argued on behalf of St.Louis University that the decree of July 7, 1943, was entered on the pleadings and that it involved nothing but a construction of the will. It is said that the judicial function exercised by the decree of July 7 is distinguishable from that incorporated in the decree of June

14, 1944. It is claimed that the latter decree and the proceedings leading up to it involved the application of the *cy pres* doctrine to the bequest contained in paragraph F. Such contention is advanced in answer to that made by Washington University that the matters contained in the first decree are *res judicata* of all that was determined by the second decree. In addition to its contention that the decree of July 7 is *res judicata* of the matters contained in the second decree, it is contended on behalf of Washington University that the pleadings were not framed to raise the issue of the applicability of the *cy pres* doctrine, and that in any event the court, by the decree of June 14, undertook to exercise a discretion in locating the university, which by paragraph F was vested exclusively in the trustee.

It is well settled that an intervenor takes the pleadings as they are at the time permission is granted for him to intervene. (*Groves* v. *Farmers State Bank,* 368 Ill. 35.) Intervention implies that there are issues in the action which have not been determined. (*Haase* v. *Haase,* 261 Ill. 30.) Both universities are intervenors in this action, for neither had any interest in the litigation when the decree of July 7 was entered.

Since no question is raised as to the construction given by the first decree to any of the several clauses of the will and codicils except paragraph F of article 11 of the first codicil, our discussions will be restricted to its terms. The language of paragraph F evidences an intent of the testator to bequeath the residue of his estate to the establishment of an educational institution in Missouri. It was his expressed intention that such institution should bear his name. Furthermore, he directed that such institution, when established, should furnish instruction along the lines of technology, and to better exemplify the purpose of the bequest, he referred to the kind of instruction given by Boston "Tech" of Boston, or Rice Institute of Houston,

Texas. It was definitely stated that such school should be located in the State of Missouri. The particular location in that State was not fixed, but in clear and unmistakable language he directed that the location of the educational institution in the State of Missouri "is left to the discretion of my trustee." In addition, he provided that the trustee should exercise its discretion in the light of "the inducements that may be offered and as the need may appear."

At this time the query is pertinent as to the power which a court of equity possesses and may exercise in advising and directing a trustee in reference to the trust. Such a court has original and inherent jurisdiction to respond to the request of trustees for advice, protection and guidance as to doubtful questions touching the trustee's powers and duties. (*Village of Hinsdale* v. *Chicago City Missionary Society,* 375 Ill. 220; *Maguire* v. *City of Macomb,* 293 Ill. 441.) Courts of equity will not, however, interfere with the exercise of the discretionary powers of a trustee in the absence of proof of fraud, bad faith, or abuse of discretion, nor will they undertake to exercise a discretion which, by the instrument creating the trust, has been left to the trustee. *Martin* v. *McCune,* 318 Ill. 585; *Fischer* v. *Butz,* 224 Ill. 379.

Where the benevolent intention of the creator of a charitable trust cannot be carried out as made but may be exercised in substance, a court of equity may execute the trust *cy pres.* (*Board of Education* v. *City of Rockford,* 372 Ill. 442; *Bruce* v. *Maxwell,* 311 Ill. 479; *People ex rel. Smith* v. *Braucher,* 258 Ill. 604.) But it is for the court and not the trustee to determine whether the trust must be exercised through the *cy pres* power. Bogert on Trusts, vol. 2, page 1305, sec. 435.

The complaint filed by the executor and trustee in this case embodied the theory that by paragraph F testator intended to establish an educational institution and that such

intent could be carried out. The purpose of the action was to obtain directions on doubtful questions as to the execution of the trust in the general manner expressed by testator. Nowhere did the trustee indicate in the pleading that the benevolent intent of the testator could not be carried out and that the trust would have to be executed *cy pres*. The instructions and guidance prayed for did not include a request that the court exercise the power *cy pres*. Likewise, the decree of July 7 was silent on that subject. The reservation of jurisdiction as contained in that decree for determination of further issues did not preserve to the court the power to apply the *cy pres* doctrine, unless amended or supplemental pleadings were filed to make the applicability of the doctrine an issue. It is elementary that hearings and decrees must be founded on pleadings.

The possibility of applying the *cy pres* power appears to have been introduced into the case through the reports of the "Committee." We do not question the diligence of the "Committee" or the painstaking care with which they made their recommendations, but the procedure of appointing a "Committee" for such a purpose has no sanction in law. The trustee, in the exercise of its discretion in locating the educational institution, was required to consider the inducements that might be offered and the needs as they appeared, and in order to ascertain the facts in reference to such matters it was necessary and proper for the trustee to make an investigation and study of such matters. It may be reasonable expenses for such a survey would have been a proper charge against the trust fund, but it is clear that the divergent recommendations of the majority and minority reports of the "Committee" could not substitute as pleadings and serve to present an issue upon which the court could undertake to execute the trust *cy pres*.

The decree of July 7 construed paragraph F and determined that the selection of a location for the educational institution in Missouri was left to the discretion of the

trustee. It also declared that the beneficiary of the trust might be an educational institution already existing and operating in the State. There was no appeal from that decree and it became binding upon all parties. Thereafter, the trustee exercised the discretion and selected Washington University as the agency through which the trust should be executed. That was final and the decree of June 14 selecting St. Louis University as the recipient of the fund was erroneously entered. The judgment of the Appellate Court reversing said decree was correct.

This contest between these two great universities has been determined upon the legal questions involved. It does not in any way rest upon the superior qualifications of one university over the other, for that was not necessary to a decision of this case. The briefs of the two universities emphasize the point that the contest should not be construed as an attempt by one to disparage the educational work accomplished by the other, and this opinion should be construed in that light.

Murtaugh, the trustee of the interest of persons not in being, contends that it was the testator's intention to create a trust for the establishment of a specific type of institution as a memorial to himself and that it should be independent of and separated from any pre-existing educational institution. He also contends that the charitable intent of the testator as expressed in paragraph F is impossible of execution either by the *cy pres* power, or otherwise, and that the bequest fails and the residuary fund should pass as intestate property. We have concluded that the decree of July 7 has determined that the trust can be carried out, and that the trustee has the authority to select an educational institution already in existence as an agency through which the trust may operate. We have examined the cases cited by Murtaugh, trustee, but we find nothing in them that conflicts with the views expressed.

The trustees who were to hold the bequest for the maintenance of the Rock Creek cemetery, the trustees who were to manage the forest-preserve and game-refuge fund, and several of the individual beneficiaries who took bequests under the will filed a brief on this appeal which raises but one point. The decree of June 14, 1944, directed that the residuary fund provided by paragraph F should "be held in perpetuity by the Continental Illinois National Bank and Trust Company of Chicago * * * as a charitable trust fund for the exclusive use and benefit of the Sever Institute of Geophysical Technology." It is contended that a proper administration of the trust fund will necessarily require that the principal part of the activities of the trustee in reference to such administration shall be carried on in the State of Missouri and that, under such circumstances, the trust fund should be taken from the jurisdiction of the courts of this State and placed under the guidance and direction of a proper court in the State of Missouri. It is a sufficient answer to beneficiaries' contention to say that the decree of June 14, including the direction to which objection is made, cannot be sustained. Furthermore, the testator selected the Continental Illinois National Bank and Trust Company of Chicago as trustee and vested it with powers, including an exercise of discretion, which at this time have not been fully executed. The trustee named must continue so that it may carry out the purposes of the trust as expressed.

The judgment of the Appellate Court is affirmed and, in accordance with the remandment order of that court, the cause is remanded to the superior court of Cook county with directions to proceed in accordance with the views herein expressed.

*Judgment of Appellate Court affirmed, and cause remanded, with directions.*

Mr. CHIEF JUSTICE THOMPSON, dissenting.