(No. 33975.—

THE CITY OF AURORA *ex rel.*, Paul Egan, Appellant, *vs.* THE YOUNG MEN'S CHRISTIAN ASSOCIATION OF AURORA *et al.*, Appellees.

*Opinion filed September 25, 1956.*

COOPER & DONAT, of Geneva, and CHARLES A. DARLING, of Aurora, (RICHARD L. COOPER, of counsel,) for appellant.

HAROLD L. BEAMISH, Corporation Counsel, for the City of Aurora and other appellees, and REID, OCHSENSCHLAGER AND MURPHY, of Aurora, (LAMBERT M. OCHSENSCHLAGER, and ROBERT B. HUPP, of counsel,) for appellee Young Men's Christian Association of Aurora.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

This appeal questions the validity of a deed of the city of Aurora conveying certain real estate to the Young Men's Christian Association of that city (herein referred to as YMCA). The plaintiff brought his action as a citizen, taxpayer and mayor of the city. The land in question was deeded to the city August 2, 1945, by Col. and Mrs. Copley and the deed of conveyance gave the city the property "to hold and use and permit the use for public purposes, either by the grantee or by the State of Illinois as the grantee may determine." The city authorities, after accepting the gift of this land, quitclaimed it to the Illinois Armory Board on July 17, 1946. Thereafter on December 18, 1951, the Armory Board, pursuant to legislative authority, reconveyed this tract to the city. In May of 1954 the city council of Aurora found that the land was no longer necessary, appropriate or required for the use of the city, and after full compliance with sections 59—1 and 59—2 of the Revised Cities and Villages Act, (Ill. Rev. Stat. 1953, chap. 24, pars. 59—1 and 59—2,) sold and conveyed the land to the YMCA, as high bidder, for $25,000 on June 21, 1954. The mayor, being the only objecting member of the council as to the entire transaction, refused

to open the bid and to sign the deed. The conveyance was signed by two city commissioners and attested by the city clerk.

It appeared that the city had investigated and consulted a city planning expert concerning the land and it was concluded that it was not satisfactory for a playground, a swimming pool or a city hall. It further appears that no substantial use of the land was ever made. A portion, however, was used for a parking lot by people who worked in nearby industries. The city did not improve this lot. After execution of the city's deed to the YMCA the surviving heirs of the Copleys quitclaimed their interest in this land to the same organization.

The plaintiff now urges that the authority conferred upon municipalities by section 59—1 of the Revised Cities and Villages Act is unconstitutional if construed to permit sale of land dedicated to public uses and purposes to a private corporation. He further contends that the property in question was held in trust by the city for the public in general and may not be diverted by such a sale. Other points raised in his brief are to the effect that the YMCA is not a public use or purpose, that the mayor is a proper person to bring such an action, that the trial court erred in striking allegations charging inadequacy of sale price, that absence of the mayor's signature to the deed renders it a nullity and that the Copley deed to the city conveyed the entire fee to the land without any limitations or restrictions, so that if the land be diverted to an unauthorized use equity will intervene at the instance of a taxpayer or citizen.

The defendant filed answer which joined issue with the plaintiff on the constitutionality of the statute, and filed counterclaim wherein it sought to have the court declare the deed from the city to be a good and valid conveyance of the premises under consideration, or, in the alternative, if the deed be declared insufficient, that a writ of *mandamus* issue to compel the plaintiff, as mayor of

the city of Aurora, to execute and deliver a good and sufficient deed to the defendant. The plaintiff, by suitable reply, denied that the defendant was entitled to the relief sought in the counterclaim.

Section 59—1, in force for many years before the execution of the Copley deed to the city, provides:

"Any city or village incorporated under any general or special law which acquires or holds any real estate for any purpose whatsoever, except real estate granted to a municipality as commons by a grant which has been confirmed by the government of the United States, has the power to lease the real estate for any term not exceeding ninety-nine years, and to convey the real estate when, in the opinion of the corporate authorities, the real estate is no longer necessary, appropriate, required for the use of, profitable to, or for the best interests of the city or village. This power shall be exercised by an ordinance passed by three-fourths of all aldermen or trustees of the municipality, at any regular meeting or at any special meeting called for that purpose. However, the corporate authorities have the power to authorize any municipal officer to make leases for terms not exceeding two years in such manner as they may determine." Ill. Rev. Stat. 1955, chap. 24, par. 59—1.

The parties all proceed on the assumption that section 59—1 was intended to apply to the conveyance in question. Defendants assert that the conveyance was justified by that section while plaintiff argues that the statute is violative of the due process clause of the Illinois constitution. The substance of the argument in this respect is that the municipality holds the property in trust for the public, and by permitting sale of the property to a private corporation the public as beneficial owners of the land are deprived of a vested right without due process. This assumption by the parties cannot preclude this court from determining if sections 59—1 and 59—2 do in fact apply to this conveyance. We will not consider the constitutionality of a statute

if the case may be disposed of without determining that question. (*Illinois Central Railroad Co.* v. *Illinois Commerce Com.* 411 Ill. 526; *Cohen* v. *Lerman*, 408 Ill. 155.) It would be clearly improper for us to determine the constitutionality of the statute before first determining if it governed and validated the conveyance in question. *Fairbank, Morse & Co.* v. *City of Freeport*, 5 Ill.2d 85, at 90.

In considering the applicability of section 59—1, we turn first to the nature of the city's ownership of the land and then to the statutory framework established for our municipalities. The conveyance by the Copleys to the city of Aurora was a gift of land "to hold and use and permit the use for public purposes." From reading the deed, we conclude that this language in the *habendum clause*, expressed a trust purpose and did not create a condition, a base fee, or a possibility of reverter. (*Newton* v. *Village of Glen Ellyn*, 374 Ill. 50; *Downen* v. *Rayburn*, 214 Ill. 342.) The effect of the conveyance was to vest legal title in the city of Aurora upon an express trust to use the land for public purposes. Such a gift, when accepted, created a charitable trust with legal title in the city as trustee for the benefit of the public. (IV Scott on Trusts, 2d ed. sec. 373-373.1) The city had a right to accept such a trust (Ill. Rev. Stat. 1953, chap. 24, par. 2—9; 10 McQuillin, Municipal Corporations, sec. 28.25,) and the record affirmatively indicates it did so.

In the absence of any applicable legislation the city would have no power to convey and divert property held on such a trust to any other purpose or use. (*City of Jacksonville* v. *The Jacksonville Railway Co.* 67 Ill. 540; *City of Alton* v. *Illinois Transportation Co.* 12 Ill. 38; 10 McQuillin, Municipal Corporations, sec. 28.38-28.39.) Text writers and courts have even questioned whether land purchased by the city, free of any express trust limitation, and thereafter applied to a public use can be conveyed without statutory authority. (10 McQuillin, Municipal Cor-

porations, sec. 28.38; *Dickenson* v. *City of Anna,* 310 Ill. 222.) We have recently referred to these limitations of municipal power in *Schien* v. *City of Virden,* 5 Ill.2d 494, relied upon by plaintiff. In that case, however, we held that the action of the city was not a diversion from a public use, and the language of that opinion pertaining to limitations of municipal power were dictum and without application to the facts before us.

In the light of this common-law background, we must examine not only section 59—1, but also section 23—103 of the same act, which provides that a city has the general power, "To donate, sell, lease, or convey any land heretofore acquired to the State * * * to be used as a site for an armory." The same section, however, contains an absolute prohibition as to lands such as involved here. "No municipality, however, shall have any power to divert any gift, grant, or devise from the specific purpose designated by the donor." Section 59—1, however, purports to grant a special power to sell real estate which it "acquires or holds for any purpose whatsoever."

If section 59—1 were intended to apply to the land here, then it would be in direct conflict with the clearly expressed prohibition of section 23—103. We do not, however, consider the statutes to be in conflict. The prohibition of section 23—103 is limited solely to express trusts in which a specific purpose was designated by the donor. The power given by 59—1, however, refers to the purpose for which the city acquired or holds the land.

We think it a reasonable construction that the legislature, by section 59—1, intended to permit municipalities to dispose of real estate, the title to which they had acquired absolutely and thereafter devoted to a public use. Since statutes granting the general right to sell municipal real estate have been held to apply only to real estate held or acquired for private purposes, (10 McQuillin, Municipal Corporations, sec. 28.40,) the phrase in section 59—1, "for

any purpose whatsoever," has meaning in embracing lands devoted by the city to both private and public purposes.

We do not think it necessary to now decide the extent of the legislature's power to authorize the sale of property held on express trust, by either retroactive or prospective legislation. There is authority that not even the legislature has the power to permit diversion of an express trust created by the grant of the settlor (*Girard* v. *Philadelphia,* 7 Wall. (U.S.) 1, 19 L. ed. 53; *Cary Library* v. *Bliss,* 151 Mass. 364, 25 N.E. 93; *Illinois Central Railroad Co.* v. *Illinois,* 146 U.S. 387, 26 L. ed. 1018.) However, special statutes permitting the sale of land held under an express trust have been upheld on the doctrine of legislative *cy pres* descending from the common-law sign manual. *Trustees of New Castle Common* v. *Gordy,* 33 Del. Ch. 334, 93 A.2d 509; *Stanley* v. *Colt,* 5 Wall. 119, 18 L. ed. 592; 2 Bogert, Trusts and Trustees, sec. 398.

In the light of this background, however, we do not believe it was the intention of the legislature to permit the sale of property in which the city holds mere legal title on express trust established by a settlor for the public, especially when there is no provision in the statute to devote the proceeds of the sale to the same public purposes as contained in the express trust. Such a broad exercise of legislative power would certainly require the clearest expression of intention, especially in the face of the prohibition of section 23—103. The language of section 59—1 is sufficient to express an intention to include lands owned outright whether devoted to public or private uses, but is insufficient to embrace lands held under an express trust created by a settlor. Cf. *Lake County Water & Light Co.* v. *Walsh,* 160 Ind. 32, 65 N.E. 530; *Buckhout* v. *City of Newport,* 68 R.I. 280, 27 A.2d 317.

Our conclusion that section 59—1 is inapplicable does not determine the merits of this case, however. The record indicates that no substantial public use of the real estate

has been made since 1945. The evidence further shows that investigations have been made and that it was reasonably concluded that no public use could be made of it. It appears that a city planner determined it to be inappropriate for public use. The language of the deed of the settlor, Copley, clearly indicates a general charitable purpose for the benefit of the public. At public sale this land brought $25,000 which could be used for public purposes. Without attempting to review all the facts in the record, we feel that the evidence submitted brings this case within the broad powers of a court of equity in the exercise of its traditional power over charitable trusts. *Catholic Bishop of Chicago* v. *Murr,* 3 Ill.2d 107; *Board of Education* v. *City of Rockford,* 372 Ill. 442.

Under the doctrine of *cy pres,* if property is given in trust to be applied to a particular charitable purpose, and it becomes impossible, impractical or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose falling within the general purpose of the settlor. (*Trustees of Rush Medical College* v. *University of Chicago,* 312 Ill. 109; *Bruce* v. *Maxwell,* 311 Ill. 479; 2 Restatement, Trusts, sec. 399.) In the exercise of this power, equity may decree a sale of trust realty even in the face of an express prohibition if the designated use becomes impracticable. *Catholic Bishop of Chicago* v. *Murr,* 3 Ill.2d 107; *Board of Education* v. *City of Rockford,* 372 Ill. 442.

We feel that, under the prayer for general relief in the defendant's counterclaim and under the evidence already in the record, the trial court would have been justified, in the exercise of its discretion, to decree a sale of this property and impress the same trust upon the proceeds thereof. (*County of Du Page* v. *Henderson,* 402 Ill. 179, at 191 and 192.) While this case was not tried on that theory in

the lower court and its decree did not pass upon the question of whether the circumstances justified the application of the *cy pres* doctrine, the proof before the court would support such decree and it was within the sound discretion of the court to grant such relief as the equities of the case may require under the evidence. A court of equity is not restricted by any limitation that tends to trammel the free and just exercise of discretion and particularly where the public interest is involved. *Virginian Railroad Co.* v. *System Federation No. 40*, 300 U.S. 515, 81 L. ed. 789.

Further, section 92 of the Civil Practice Act provides that in all appeals the reviewing court may, in its discretion, and on such terms as it deems just, "give any judgment and make any order which ought to have been given or made, and make any other and further orders and grant such relief, including a remandment, a partial reversal, the order of a partial new trial, the entry of a remittitur, or the issuance of execution, that the case may require." (Ill. Rev. Stat. 1955, chap. 110, par. 92(1)(e).) Aside from the statutory authority, the power is in the Supreme Court to enter such final judgment as the evidence in the record shows should have been entered. *Pope* v. *Speiser*, 7 Ill.2d 231; *City of Spring Valley* v. *Spring Valley Coal Co.* 173 Ill. 497; *Manistee Lumber Co.* v. *Union Nat. Bank*, 143 Ill. 490; *Supreme Lodge A.O.U.W.* v. *Zuhlke*, 129 Ill. 298.

We believe that justice requires that this cause be reversed and remanded with instructions to permit amendments or further pleadings and additional proof, if necessary in the opinion of the trial court, to determine the issues herein in accordance with the opinion of this court. If the trial court in the exercise of its traditional powers over trusts, should approve the sale of the premises heretofore made to the YMCA, then it should determine how the proceeds of such sale should be applied for city purposes under the *cy pres* doctrine of trusts and take such other action as may be required to effectuate its decree.

In connection with any sale of this property, a court of equity, under its chancery powers, has the power to order the mayor and necessary city authorities to execute a proper deed and upon their failure or refusal to do so, to direct the master in chancery to execute such deed for and on behalf of the city of Aurora. Accordingly, the decree of the circuit court of Kane County is reversed and the cause is remanded with directions for further proceedings consistent herewith.

*Reversed and remanded, with directions.*