*In re* PETITION OF THE VILLAGE OF MOUNT PROSPECT, ILLINOIS, TO SELL CERTAIN PUBLIC PROPERTY NO LONGER FEASIBLE OR PRACTICABLE FOR PUBLIC PURPOSES AND TO APPLY THE PROCEEDS THEREOF TO RELATED PUBLIC USE PURSUANT TO THE DOCTRINE OF *CY PRES* (The Village of Mount Prospect, Plaintiff-Appellant, v. The People *ex rel.* Neil F. Hartigan, Attorney General, Defendant-Appellee (Bruce J. Motyka *et al.*, Intervenors)).

First District (1st Division)   No. 86—1989

Opinion filed February 29, 1988.

James K. Stucko, Arthur M. Holtzman, and Ross H. Fishman, all of Pedersen & Houpt, P.C., of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Christine H. Rosso, Deborah R. Stone, and Matthew D. Shapiro, Assistant Attorneys General, of Chicago of counsel), for appellee State of Illinois.

Bruce J. Motyka, of Mount Prospect, appellee *pro se.*

JUSTICE O'CONNOR delivered the opinion of the court:

Petitioner, the Village of Mount Prospect (Village), appeals from the order of the circuit court of Cook County denying its petition, pursuant to the doctrine of *cy pres*, requesting approval of the sale of a part of property which was dedicated for public purposes.

On appeal, the Village contends that: (1) the trial court's denial of the petition was contrary to the law and the manifest weight of the evidence and that the court exceeded its authority in determining that it was practical and feasible to retain the property as a vacant lot; (2) the trial court erred in considering the interests of nonparties; and (3) the exhibits attached to the intervenors' response to the petition were inadmissible. We affirm.

According to the Hiawatha Trail Subdivision Plat, dated August 1, 1956, L. George O'Day dedicated certain property "for public purposes," with no other stated restrictions on the use of the land. The lot has a frontage of approximately 95 feet and an irregular depth of

approximately 140 feet. At the time of the dedication, the Village had an ordinance in effect which required subdividers to dedicate at least one lot in every 60 to the Village without specifying any particular use for the land. On January 18, 1966, the Village adopted a resolution to accept formally the dedication.

Since the dedication, the Village has kept the lot vacant, but has used it for access to clean and maintain the Weller Creek Drainage Ditch, which is located adjacent to the rear of the lot. The Village incurs $1,500 expenses annually out of its annual budget of $28 million for maintenance of the property.

In 1985, the Village corporate authorities determined that it was no longer necessary or feasible to continue to use the entire property for public purposes because of its small size and its location next to a potentially hazardous open ditch. In addition, the Village determined that only a 20-foot strip of the land was necessary as an access route to clean and maintain the ditch.

On March 5, 1985, the Village adopted an ordinance stating that the remaining property was no longer necessary or useful for public purposes and therefore was surplus property and should be sold. In addition, the ordinance authorized the sale of the land to McKone Builders, Inc., for $40;000, reserving to the Village a 20-foot wide easement in order to retain access to the drainage ditch.

On April 15, 1985, the Village filed a petition in the circuit court requesting approval of the sale of the lot pursuant to the doctrine of *cy pres*. On March 24, 1986, the Village filed its first amended petition in order to comply with a court order requiring public bidding on the property. On the same date, intervenors, Raymond A. Gulick and Bruce J. Motyka, intervened *pro se*. They argued that the open lot, which adjoins each of their homes, influenced their decisions to purchase those homes. In addition, they asserted that the existence of the adjoining lot makes their property more valuable, it adds to the attractiveness of their homes and it gives their children an area in which to play.

The Illinois Attorney General's office, represented by an assistant Attorney General, appeared on behalf of the people of the State of Illinois. The assistant Attorney General agreed with the Village that the most beneficial use of the property for the entire village would be to sell it and to apply the proceeds to a public purpose.

On June 23, 1986, the trial court denied the petition, finding, among other things, that: the property was dedicated for "public purposes" and was given for the purpose of providing access to clean and maintain the Weller Creek Drainage Ditch; there was no right of re-

verter or reentry in the dedication; at the time of the donation, the Village had in existence a requirement of "open land" within each subdivision; the Village presented no evidence that the requirement no longer exists; the property is used solely for the purpose of cleaning and maintaining the ditch; only a 20-foot strip of land is necessary to accomplish that purpose; the annual cost to the Village of maintaining the lot is minuscule ($1,500) in comparison to the Village's total budget ($28 million); nearly all of the nearby residents signed a petition objecting to the sale of the land; two residents appeared as representatives at the hearings; in purchasing and building their homes, the residents relied on the dedication; photographs of the property depict a grassy area containing grass, trees and shrubs that enhance the area; it is practical and feasible to retain the property as a vacant lot; and the present use of the property is the best use for the public.

The Village first contends that the trial court's denial of its petition was contrary to the law and the manifest weight of the evidence. The Village argues that the court exceeded its authority in determining that it was practical and feasible to retain the property as a vacant lot because once the municipality determined that the dedicated property was impracticable to use in its current form, the trial court's only role was to determine for what other purposes the property may have been used. In addition, the particular purpose for which the land was dedicated, to clean and to maintain the ditch, will continue after the sale.

●■ ■ A dedication of land as a "public ground" is an unrestricted dedication to public use. (*Schien v. City of Virden* (1955), 5 Ill. 2d 494, 497, 126 N.E.2d 201; *Chicago, Rock Island & Pacific R.R. Co. v. City of Joliet* (1875), 79 Ill. 25, 33, 36.) All dedications for public use are considered with reference to the purpose for which the land was dedicated. That purpose may be determined by a designation which the owner affixed on a map (*Village of Riverside v. MacLain* (1904), 210 Ill. 308, 321, 71 N.E. 408) or a plat (*Schien v. City of Virden* (1955), 5 Ill. 2d 494, 496, 126 N.E.2d 201). When land is dedicated for public usage, the municipality becomes the trustee for the benefit of the public. (*Schien v. City of Virden* (1955), 5 Ill. 2d 494, 498, 126 N.E.2d 201; *McPike v. Illinois Terminal R.R. Co.* (1922), 305 Ill. 298, 301, 137 N.E. 235.) Once the dedication is accepted, the city acquires legal title to the land upon an express charitable trust to use the property for public purposes. (*City of Aurora ex rel. Egan v. YMCA* (1956), 9 Ill. 2d 286, 291, 137 N.E.2d 347.) The legislature or the city may designate any reasonable public use for the property. *Schien v. City of Virden* (1955), 5 Ill. 2d 494, 496, 126 N.E.2d 201;

*Village of Riverside v. MacLain* (1904), 210 Ill. 308, 326-28, 71 N.E. 408.

■ Still, the municipality may not alienate or dispose of dedicated property for its own benefit, and as trustee, it has no right to use the land inconsistently with public usage. (*McPike v. Illinois Terminal R.R. Co.* (1922), 305 Ill. 298, 301, 137 N.E. 235.) The city has no power or authority to convey or lease any part of the property. Not even the legislature can authorize the municipality to alienate its interest. *Schien v. City of Virden* (1955), 5 Ill. 2d 494, 498-99, 126 N.E.2d 201.

■ Furthermore, a court of equity has original and inherent jurisdiction to respond to the request of a trustee for advice, protection and guidance concerning the trustee's powers and duties. A court, however, will not interfere with the trustee's exercise of discretionary powers absent proof of fraud, bad faith or an abuse of discretion. *Continental Illinois National Bank & Trust Co. v. Sever* (1946), 393 Ill. 81, 93, 65 N.E.2d 385.

■ Where the literal execution of a charitable trust, which was executed with a general charitable purpose to devote the trust property to charitable purposes, is impossible, impractical or inexpedient, the trust will not fail, but may be executed *cy pres*. (*First National Bank v. Elliott* (1950), 406 Ill. 44, 56, 92 N.E.2d 66.) *Cy pres* is defined:

> " 'If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.' " (406 Ill. at 56, quoting Restatement (Second) of Trusts §399, at 297 (1959).)

The court, not the trustee, decides whether to apply the *cy pres* doctrine to a particular trust. *Continental Illinois National Bank & Trust Co. v. Sever* (1946), 393 Ill. 81, 93, 65 N.E.2d 385.

●■ ■ In the case at bar, the only evidence of the dedicator's intent is on the plat, which states that the property is dedicated "for public purposes." Therefore, the dedication is an unrestricted dedication to public use. All of the parties agree that since the dedication, the Village has used the lot solely for access to clean and maintain the drainage ditch, and that only a 20-foot strip of land is necessary to accomplish that purpose. Furthermore, the Village has provided main-

tenance for the property, thus keeping it in good condition. The Village, however, need not keep the lot vacant indefinitely merely because it has done so since the dedication. The property may be used for any public purpose, as long as it is reasonable. (See *Schien v. City of Virden* (1955), 5 Ill. 2d 494, 126 N.E.2d 201 (city may erect a fire house on property dedicated as a "public ground"); *Chicago, Rock Island & Pacific R.R. Co. v. City of Joliet* (1875), 79 Ill. 25 (a railroad may be operated over property dedicated as a "public ground").) Nevertheless, the Village may not sell the property to a private builder for the purpose of building a private residence on the land. Such disposal of the dedicated property for the Village's own benefit is not reasonable because it is inconsistent with public use.

●■ ■ The Village argues, though, that once it determined that the present use of the property was impracticable, the trial court was compelled to accept that finding. Thereafter, the court's only duty under the *cy pres* doctrine was to determine another use for the land. We disagree. If we were to accept the Village's argument, in effect, we would be taking away the court's discretion under *cy pres*, *i.e.*, to determine whether or not to apply the doctrine in the first instance, and we would be giving that discretion to the Village. However, under the doctrine of *cy pres*, it is the court, not the municipality, that determines whether or not to apply the doctrine. Included within that determination a court must be able also to decide whether or not it would be practical and feasible to use dedicated property in the manner it has been used since its dedication. Consequently, in the instant case, the trial court, as a court of equity, was within its authority when it decided, without reaching the issue of to what other use the property could be put, that the *cy pres* doctrine should not be applied because it was practical and feasible to keep the lot in its present condition.

●■ The Village further argues that it is authorized by statute to sell the dedicated land. According to section 11—76—1 of the Illinois Municipal Code, a municipality may convey real estate which it holds "for any purpose whatsoever, *** when, in the opinion of the corporate authorities, the real estate is no longer necessary, appropriate, required for the use of, profitable to, or for the best interests of the city or village." (Ill. Rev. Stat. 1985, ch. 24, par. 11—76—1.) Under that section, a municipality may dispose of real estate which it has acquired absolutely and thereafter has been devoted to public use. The municipality, however, may not dispose of property in which it holds merely the legal title upon an express trust, established by a settlor, to use the property for public purposes. (*City of Aurora ex rel. Egan*

*v. YMCA* (1956), 9 Ill. 2d 286, 292-93, 137 N.E.2d 347 (interpreting Ill. Rev. Stat. 1955, ch. 24, par. 59—1, the predecessor to section 11—76—1).) Hence, section 11—76—1 does not authorize the Village to dispose of the dedicated property.

The Village next contends that the trial court erred in considering the interests of nonparties. The Village argues that the court improperly analyzed the *pro se* intervenors' arguments as though they represented the interests of all of the nearby residents even though the lawsuit was not a class action. In addition, the Village asserts that the assistant Attorney General, who was the only proper representative of the public interest, determined at trial that selling the land and applying the proceeds to a related public purpose was the most beneficial use of the property for the public.

●■ ■ Where land is dedicated to public use, the abutting property owners have an interest in restraining the municipality from violating its duties as trustee, and they need not prove any special damage or injury. (See *Village of Riverside v. MacLain* (1904), 210 Ill. 308, 329, 71 N.E. 408.) Furthermore, members of the public, particularly taxpayers, have standing to enforce a trust upon which public property is held. *Paepcke v. Public Building Comm'n* (1970), 46 Ill. 2d 330, 341, 263 N.E.2d 11.

●■ In the case at bar, the Village correctly states that intervenors did not represent a class because no class action existed. Therefore, in its memorandum opinion and order, the trial court incorrectly stated that intervenors represented all of the nearby residents. However, the court had before it a petition, signed by 56 of those residents, objecting to the sale of the land. Presumably those residents were taxpayers because they were homeowners in the nearby area. In any event, they were members of the public. Thus, in reaching its final decision, the court correctly took into account the interests of those residents, as it correctly took into account the interests of the intervenors.

In addition, while the Attorney General's office agreed with the Village in the circuit court, on appeal it maintains that the court should be affirmed because the evidence was not "so one-sided" as to warrant a finding that the court abused its discretion in ruling against the Village. We agree.

Finally, the Village contends that the exhibits attached to the intervenors' response to the petition were not properly in evidence because they were not introduced into evidence. Therefore, the trial court should not have considered them. Specifically, the Village argues that the court relied improperly on both the dedicator's, O'Day's, let-

ter to the intervenor, Motyka, because the letter was hearsay, and the photographs of the property.

●■ The letter from O'Day to Motyka was hearsay because it was made by an out-of-court declarant and was offered to prove the truth of the matter asserted, the donor's intent. (See *Simon v. Plotkin* (1977), 50 Ill. App. 3d 603, 607, 365 N.E.2d 1022.) In addition, it was not shown at trial that Mr. O'Day was unavailable to testify. (See *Anderson v. Hyster Co.* (1977), 56 Ill. App. 3d 41, 51, 371 N.E.2d 279, *aff'd* (1979), 74 Ill. 2d 364, 385 N.E.2d 690.) Although the letter should not have been admitted or considered by the trial court, it added no new information regarding the dedicator's intent. All parties agreed that a village ordinance mandated the dedication. Furthermore, the donor's intent is clear from the plat: the dedication was "for public purposes." The result the court reached would have been the same with or without the letter; therefore, its admission was not reversible error. *Pagel v. Yates* (1984), 128 Ill. App. 3d 897, 901, 471 N.E.2d 946.

●■ In addition, the photographs were properly in evidence. First, the Village never objected to them. The Village now argues that it did not need to object because the photographs were not tendered into evidence. The record shows, however, that the Village objected to the letter from Mr. O'Day even though it was not tendered into evidence either. The Village could have objected to the photographs at the same time, but it did not. Therefore, it has waived this issue. See *Texaco, Inc. v. McGrew Lumber Co.* (1969), 117 Ill. App. 2d 351, 359, 254 N.E.2d 584, *appeal denied* (1970), 42 Ill. 2d 587.

In any event, the photographs were relevant. They showed that the property was well maintained and was not a dumping ground or unattractive as opposed to a claim made by the Village manager in an affidavit that the land was a collecting place for debris and animal waste. Furthermore, the photographs depicted, not merely a vacant lot, as the Village claimed, but a grassy area with grass, trees and shrubs.

Accordingly, the circuit court's denial of the Village's petition, pursuant to the doctrine of *cy pres,* for approval of the sale of property dedicated for public purposes is affirmed.

Affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.