FRANKLIN A. SEWARD AND HELEN SEWARD, HIS WIFE, PLAINTIFFS-RESPONDENTS, v. NATURAL GAS COMPANY OF NEW JERSEY, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued September 17, 1951—Decided October 15, 1951.

*Mr. Samuel A. Larner* argued the cause for the appellant (*Mr. Wilbur A. Stevens,* attorney).

*Mr. William J. O'Hagan* argued the cause for the respondents (*Messrs. Stout and O'Hagan,* attorneys).

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal from a judgment of the Appellate Division which reversed a judgment of the Superior Court, Law Division, entered on the verdict of a jury in favor of the defendant and against the plaintiffs. The case was certified here after petition therefor.

The action was in negligence to recover damages sustained by the plaintiffs as the result of an explosion of propane gas which had escaped from a side-arm hot water heater, installed by the defendant on order of the plaintiff, Mr. Seward, in his home as part of a system which included a gas storage tank with connections and a gas stove which was placed in the kitchen.

The complaint charged negligence in very general terms alleging, (1) that the appellant had furnished improper equipment and appliances; (2) that the appliances and equipment had been improperly installed, and (3) that it had furnished unsafe and highly dangerous gas for the operation of the system.

The facts are set out in complete detail in the opinion of the Appellate Division and will only be repeated here when necessary for the disposition of this appeal.

The immediate cause of the explosion was an attempt by the plaintiff, Helen Seward, to re-light the gas heater after it had gone out for some unaccountable reason. It was 30 or 40 minutes after she had originally lit the heater that she discovered the flame had gone out. She testified she then waited about two hours, knowing the gas was dangerous, before she attempted to re-light it, but when she lit the match and even before she opened the door of the heater the explosion occurred.

Both the trial court and the Appellate Division sustained the trial contentions of the defendant, and properly so, that there was no proof before it that the equipment and appliances themselves were defective and improper, that the doctrine of *res ipsa loquitur* was without application and that there was no proof that in 1939 the established practice required propane gas facilities to be equipped with automatic gas shut-offs. In fact, an automatic shut-off valve was not ordered by the plaintiffs, the order specifically calling for a manually operated side-arm water heater to which there was later attached, by some one other than the defendant, a signal device which indicated on a red bulb in the kitchen whether the gas in the heater was turned on or off. This particular device could not and did not indicate whether the heater was actually lighted. In fact, it was showing red at the time the injured plaintiff discovered that the heater had actually gone out.

As the result of the rulings of the trial court there remained only one disputed issue of fact which went to the jury, and that was whether or not the gas supply had been odorized. Pure propane gas is odorless and the testimony was that it is established practice of the appellant, and every other company in the field, to infuse the pure gas with a small amount of ethyl mercaptan which produces the strong and odd-smelling odor which one usually associates with illuminating gas. Mrs. Seward's testimony was that she walked around in the cellar and could not smell any gas even when she first went down, when the gas had been running for some time without

a light, and that she did not smell it when she returned at the time the explosion occurred.

On the issue as to whether the gas had been odorized the jury found for the defendant, and we must necessarily start with that premise.

The remaining contention of the plaintiffs at the trial was that the installation of the gas heater was a negligent act in view of the dangerous and explosive qualities of the gas, because there was insufficient ventilation in the cellar to dissipate escaping gas and render it harmless.

This issue was precipitated by two requests to charge which were denied by the trial court. They read as follows:

"1. Propane gas is a highly volitable (sic) and explosive substance and in furnishing it to plaintiffs the law requires that the defendant use reasonable precaution to make it safe for use.
2. The defendant in this case installed a so-called 'nat gas' system in the home of the plaintiffs and connected the side-arm gas heater with such system and also furnished a tank of propane gas to burn in said side-arm heater. In the installation of the system and of the side-arm heater, the law requires of the defendant a degree of care commensurate with the risk of danger."

The Appellate Division based its reversal on the ground that despite the fact that the respondents had shown no established standards of installation which the appellant had failed to comply with, there was sufficient evidence in the case from which a jury could have concluded that the installation was negligently made and that it should have been charged on the issue of improper installation. The Appellate Division said:

"The circumstances and conditions of this case in view of the known tendency of this gas upon escaping to sink and the apparent danger in this 'pit' that such escaping gas would not be readily dissipated called upon defendant to exercise that degree of care 'which comprehends a circumspection, a foresight, a prevision. which has due and proper regard to reasonably probable contingencies,' *Adams v. Atlantic City Electric Co.*, 120 *N. J. L.* 357, 363 (*E. & A.* 1938); *Beck v. Monmouth Lumber Co.*, supra [137 *N. J. L.* 268]; *Kress v. City of Newark*, 9 *N. J. Super.* 70 (*App. Div.* 1950)."

We are in accord that these are the applicable legal principles pertaining but we disagree with the attempted application thereof under the facts and circumstances in this case.

This gas system, heater and stove were installed in a summer house in Shark River Hills, New Jersey. The house rested on a block foundation about $2\frac{1}{2}'$ from the grade, with side dimensions of 28' x 30'; the cellar or so-called "pit" was located directly under the center of the house and access to it was by a stairway from the kitchen. The "pit" was concrete lined, about 4' deep and $10\frac{1}{2}'$ square, so that there was a distance of $6\frac{1}{2}'$ from the floor of the pit to the floor of the house and there was a $2\frac{1}{2}'$ clearance on all sides and above the top of the pit. There were two windows in the foundation wall, one in the east and the other in the south wall.

There was testimony that the two cellar windows were open at all times and on the evening in question, but an expert stated the cross-ventilation so provided could have little effect on gas which collected in the pit since the gas was 60 per cent heavier than air and would sink to the bottom of the pit and remain there until diffused through the air in the entire cellar, which would be a slow process.

When the contract for the purchase and installation of the equipment was made and when it was installed the plaintiffs directed the employees of the defendant to connect up the side-arm heater to the boiler which was then in the cellar or pit. The boiler and connections to it had been installed by some one other than the appellant.

The reasoning of the Appellate Division was that the construction of this cellar was peculiar and created a condition in which the propane gas, because it is heavier than air, would escape to the bottom of the pit and there remain for some time, and that this peculiar condition coming to the notice of the appellant required vigilance and attention to the possibilities inherent in the dangerous explosive qualities of the gas.

We disagree with this reasoning for several reasons. First, we are not in accord with the proposition that the type of construction was so peculiar as to put the appellant on notice of possible dangers. This type of construction is common and in fairly general use in a summer type of house as is involved here. It is equally common in the modern ranch-type house where the situation is somewhat similar, particularly the house without a cellar, which is placed upon a cement block foundation and has a small pit located somewhere under the floor of the house for the installation of utilities. The appellant was only called upon to deal with the situation it was faced with. It did not design the house nor could it suggest that the construction of the cellar be changed. It did not choose the place for the heater installation; it had to be attached to the boiler which was then in the pit. Any lack of sufficient ventilation was not of its making.

No rule of law imposes a positive duty on the part of a defendant in a case such as this to guard against all possible contingencies. To impose such a duty would make it an insurer. Assuming such a rule, then it would follow as a necessary result from the view taken by the Appellate Division that a utility company installing any system using highly inflammable or dangerous gas for heating or illumination purposes would be required to make a highly technical and costly chemical engineering survey or test which would establish with reasonable certainty that any unburned gas which might escape because of a defect in the system, a defect in installation, or misuse by the owners or occupants of the house, could not be exploded by a person lighting a match or producing a spark in any room or compartment of the house into which the gas had escaped.

There is no preventative for people using matches in gas-filled rooms, and the countless stories published in newspapers of gas explosions are a fact of common knowledge, the reading of which makes it perfectly obvious that even the automatic shut-offs are no infallible guaranty of safety. Admitting that propane gas sinks and is slow to diffuse, we still think

the possibilities of an explosion are no different in a cellar of this type of construction than they would be in an ordinary kitchen with windows similarly located; for here again the gas could settle and drift even into a closet where the production of a spark would instantly cause an explosion of the type we have here.

There is no proof in this case that even if such an engineering survey had been made by the appellant, such an explosion could have probably been prevented under the same facts and circumstances. And in the absence of such proof we doubt very much that such a survey, if required to be made in each case, would guarantee that any installation would probably prevent the result of the contingencies that produced the explosion here in question with the resulting injuries to the plaintiff.

It may very well be that in the future the advance of science will produce a method of installation with a higher safety factor than now exists. But for the purpose of this case there is no proof whatsoever of any method of installation that would have prevented this accident. It is no answer to flatly say that the installation should not have been made under any circumstances whatsoever, in view of the testimony that the entire installation worked satisfactorily and without incident for a period of two and one-half years.

The test of negligence is what an ordinary prudent person would do under the same or similar circumstances. And while the mere employment and use of approved mechanical appliances may not under some circumstances be a discharge of the duty owed, yet the circumspection, foresight and pre-vision, with due and proper regard to reasonably probable circumstances, which in the cases cited by the Appellate Division we have stated in some instances to be required, does not impose a duty to use the ultimate and scientifically perfect equipment or appliances with the hope that foolhardy action by human beings would be prevented. The machine has not yet been invented that can outwit the follies or foibles of human nature.

There is no proof in this case of a violation of any standard practices. There is no proof in this case of any advance theory of either chemical engineering or in the engineering of gas-burning installation which standards, if followed, would have prevented the accident. The only real safeguard established by the evidence was that due regard for safety required that an odorant be infused into the propane gas to give it a violent and disagreeable odor which would serve as a warning of its presence, and the jury in this case found as a fact that ethyl mercaptan had been infused. Under all the facts we cannot say the appellant was under a duty to refuse to install the heater.

 It is our considered opinion that on the proofs before us the appellant did not violate any duty imposed by law and owing to the plaintiffs. This being so, it was not error to deny the request to charge here in question. *Spence v. Hutchinson,* 102 *N. J. L.* 131, 134 (*Sup. Ct.* 1925); *State v. Bassone,* 109 *N. J. L.* 176, 183 (*E. & A.* 1932). To charge an abstract duty in the absence of proof of negligence would lead the jury into pure speculation and would leave the jury without instruction as to how to apply it. *Cf. Hoffman v. Trenton Times,* 125 *N. J. L.* 450, 454 (*E. & A.* 1940).

In view of the conclusion we have reached it is unnecessary to discuss the effect of lack of notice to the appellant or the duty of inspection which might follow if such notice had been given; nor is it necessary to deal with the defense of contributory negligence and assumption of risk.

The judgment of the Appellate Division is reversed.

WACHENFELD, J. (dissenting). I am not in agreement with the result or the reasoning of the majority opinion and must therefore briefly state my views.

A person is legally bound to exercise that degree of care commensurate with the danger created. The greater the danger, the greater the care, and the mere fact that standard, approved practices are followed does not of itself exculpate the wrongdoer if the injury could reasonably have been antici-

pated. *Beck v. Monmouth Lumber Co.,* 137 *N. J. L.* 268 (*E. & A.* 1948).

These principles are not questioned by either litigant and are embraced in this court's opinion. The law thus established, however, is completely nullified by the majority's application of it to the facts and circumstances involved.

Although the jury found the defendant odorized the gas for the purpose of detecting leaks, and assuming that standard methods of installation were followed, nevertheless there is sufficient evidence in the record to show that the installation of this unit, under the conditions present, created a formidable hazard which the defendant could and should have foreseen.

The cellar was small and the evident lack of ventilation preventing the dissipation of gas, which leaked at times, was known. Concededly propane gas is "explosive and dangerous" and the installer of the system was cognizant of the dimensions and construction of the cellar and that the heater was "quite a ways removed from the windows."

This gas was heavier than air and the defendant's vice-president testified the combination of gas with air in certain proportions produced an explosive mixture. Courts in other jurisdictions have decided that propane gas is a dangerous substance and may cause a powerful explosion. *March v. Carbide & Carbon Chemicals Corp.,* 265 *App. Div.* 1064, 39 *N. Y. S. 2d* 493 (1943); *Grinnell v. Carbide & Carbon Chemicals Corp.,* 282 *Mich.* 509 (*Sup. Ct. Mich.* 1937).

Following the approved, standard method of installation does not in itself constitute a protective shield against liability if it could have been reasonably foreseen that injuries would result from the operation of the unit under the then circumstances. The explosive nature of propane gas, its heavy characteristic, the probability of leaking, together with the inadequate ventilation, should have indicated to the defendant the danger of making the installation.

The majority opinion finds the cellar constructed in this house was common and in fairly general use, while the Appel-

late Division termed it "peculiar construction," which the record seems to support. In either event, the same rule, in my opinion, applies. The care which must be exercised over the construction and maintenance of a highly destructive agency requires more than the use of mere mechanical skill and approved mechanical appliances. It also includes circumspection and foresight with regard to reasonable probabilities. *Beck v. Monmouth Lumber Co., supra.*

Deeming their conclusions to be correct, I would affirm the judgment of the Appellate Division.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, BURLING and ACKERSON—5.

*For affirmance*—Justice WACHENFELD—1.