138 N.J. Super. 344 (1976)
351 A.2d 22
JOSE FRANCISCO CEPEDA, AN INFANT, BY HIS GUARDIAN AD LITEM VICTORIA CEPEDA AND VICTORIA CEPEDA, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v.
CUMBERLAND ENGINEERING COMPANY, INC., A CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 12, 1975.
Decided January 5, 1976.
*346 Before Judges MATTHEWS, LORA and MORGAN.
Mr. Edward R. Schwartz argued the cause for appellant (Messrs. Schwartz and Andolino, attorneys; Mr. Frank Cinquina, on the brief).
Mr. Mark D. Larner argued the cause for respondents (Messrs. Budd, Larner, Kent, Gross & Picillo, attorneys).
PER CURIAM.
This is a products liability case.
*347 Defendant Cumberland Engineering Company, Inc. (Cumberland), appeals from a judgment entered upon a jury verdict awarding plaintiffs damages in the amount of $125,000. Defendant contends that the trial judge erroneously denied its motion for judgment at the end of plaintiffs' case and its motion for judgment notwithstanding the verdict. Alternatively, it contends that it is entitled to a new trial because of an incorrect evidentiary ruling, erroneous rejection of several requests to charge, inconsistency between two of the answers given by the jury in connection with its special verdict, and on the ground that the verdict was contrary to the weight of the evidence.
On April 3, 1968 plaintiff Jose Cepeda, suffered an accident in the course of his employment with Rotuba Extruders, Inc. which resulted in the amputation of four fingers of his left hand. The accident occurred while plaintiff was operating a piece of equipment, known as a pelletizer, which had been designed and manufactured in 1956 by defendant and sold to Rotuba. As described by several of the witnesses, the pelletizer is a machine designed to accept thin strips of plastic from an extruder and cut them into small pellets by means of rollers which pull the strips into revolving blades which do the actual cutting. As designed by defendant, the roller area was protected by a guard, affixed to the machine by four bolts, supplied by the manufacturer to avoid accidental injury to the operator by preventing contact between the operator's body and the rollers and blades. Although designed to be affixed to the pelletizer during normal operations, the guard was removable, through use of a wrench applied to the bolts, so that the machine could be serviced and cleaned. There was no dispute but that plaintiff's accident would not have occurred had the guard been in place at the time.
Plaintiff had worked at the pelletizing machine for a period of eight months prior to the accident. At no time before the morning of the accident did he operate the equipment without the guard. Although he professed ignorance as to the nature of the guard despite his extended experience *348 with the equipment, his supervisor testified that he was instructed never to remove it. Plaintiff denied he received this instruction. The accident occurred, after three hours of continuous use without the guard, when plaintiff's hand was caught in a ribbon of plastic and uncontrollably drawn into the unguarded rollers.
Eugene Drood, vice-president of Rotuba Extruders and plant manager at the time of the accident, testified that there were three different operations which necessitated removal of the guard: first, loose particles occasionally became lodged in the machine and the guard had to be removed in order to reach them; second, when changing the colors of plastic it was essential that all residual color from the preceding run be removed, and to do that removal of the guard was essential; third, the strips of plastic do occasionally clog the machine and the guard must be removed in order to untangle and unclog the interior mechanism. Although there was some dispute as to the frequency with which the guard had to be removed during its operational functions as distinguished from maintenance of the equipment itself, the evidence clearly supports plaintiff's contention that occasions did arise necessitating its removal during normal operations. There was no dispute, however, that whenever the guard required removal for whatever cause, proper procedure required the machine to be deactivated and not to be again put into operation until the guard was replaced.
Plaintiffs, through their expert, Isaac Stewart, admitted that the guard was fully sufficient to have prevented plaintiff's accident had it been in place at the time it occurred; that it was not defectively designed, and that it not only insured the operator's safety but aided in the efficient functioning of the equipment by serving to guide the plastic ribbons into the rollers. The alleged design defect in the pelletizer upon which plaintiff predicated his claim was the absence of a so-called "interlock," a device which would have deactivated the machine whenever the guard was removed. According to Stewart, in view of the removable nature of the *349 guard and the necessity for its removal during normal operation for cleaning and unclogging the equipment, proper safety design dictated incorporation of such a device to foreclose possible operation without the guard in place. His opinion was given without reference to industry standards prevailing at the time the equipment was designed, manufactured and sold. Uncontradicted evidence from the defendant disclosed, however, that competing manufacturers utilizing a fixed guard similar to the one used on the Cumberland Pelletizer did not employ an interlock at the time this equipment was designed and sold.[1]
Defendant's expert denied the necessity for an interlock on a fixed guard, bolted to the machine.[2] He, too, testified as *350 to the adequacy of the guard to prevent what occurred in the present case. Both Stewart and defendant's expert agreed that bypassing an interlock or otherwise rendering it inoperative was a simple matter, and the latter had seen interlocks bypassed during his experience in the plastics industry.
The case was submitted to the jury on the theory of strict liability in tort. Plaintiff's motion to strike the defense of contributory negligence was denied. The judge submitted special interrogatories to the jury which required their determination as to whether the pelletizer was defective in design, whether such defect was a proximate cause of the accident, whether plaintiff was contributorily negligent and whether such contributory negligence was a proximate cause of the accident.
The jury returned a verdict in plaintiff's favor for $125,000. Specifically, the jury found the pelletizer defective in design and that such design defect was a proximate cause of plaintiff's accident. Although it also found plaintiff guilty of contributory negligence, it concluded that such contributory negligence did not proximately cause the accident. Defendant's motion for judgment notwithstanding a verdict was denied.
Defendant contends that the presence of a fully effective safety guard on the pelletizer discharged the manufacturer's acknowledged obligation to provide equipment reasonably safe for the "intended" use. Santor v. A. & M. Karagheusian, Inc., 44 N.J. 52 (1965). Plaintiff contends, on the other hand, that presence of an effective safety guard is insufficient when normal operation of the equipment requires removal of the guard in order to clean the machine; in such circumstances the manufacturer's duty extends to preventing, if feasible, possible misuse of the equipment, or operation contrary *351 to design intentions. Since it was at all times undisputed that installation of an interlock was both feasible and inexpensive, it follows, according to plaintiff, that failure to install one could properly be viewed by a jury as a design defect.
We disagree. In Bexiga v. Havir Mfg. Corp., 60 N.J. 402 (1972), a case in which plaintiff was injured by a wholly unguarded punch press, the court held that a manufacturer of such equipment, clearly dangerous when unprotected by safety devices, is not absolved from liability merely on the expectation, however reasonable (because of practices in the trade) that such necessary devices would be supplied by the purchaser. The Cumberland Pelletizer, with which we are here concerned, came equipped with an admittedly effective safety guard and we are nonetheless asked to conclude that a jury question concerning the defectiveness of the equipment was created by failure of the manufacturer to incorporate a device which would have foreclosed use of the equipment without the safety guard. We are unable to reach this conclusion.
Since a manufacturer is entitled to expect normal use of his product, Maiorino v. Weco Products Co., 45 N.J. 570, 574 (1965), and may therefore assume that a provided safety mechanism will be used, he cannot be held responsible for unforeseeable negligence on the part of third parties in operating or permitting operation of the equipment without the device. Plaintiff has offered no authority, and we have been unable to find any, which holds to the contrary. In Smith v. Hobart Mfg. Co., 302 F.2d 570 (3 Cir.1962), plaintiff's hand was injured when it became entangled in the revolving worm of an electrically powered meat grinder when he slipped on a platform while feeding meat into the grinder. When the grinder had been delivered to plaintiff's employer it had been equipped with a guard affixed to it over the mouth of the bowl into which meat was fed to be ground, the purpose of which was to prevent the hand of an operator of the machine from accidentally entering the mouth of the bowl and touching the worm. The guard was later *352 removed by one of plaintiff's coemployees in order that larger chunks of meat could be passed into the bowl. Plaintiff had operated the machine, once with the guard in place and twice with the guard removed. The accident occurred during operation of the grinder without the guard. The court reversed the judgment in favor of plaintiff and remanded the matter for trial solely on the issue of whether the guard was adequate to prevent the accident since impugned evidential rulings precluded consideration of that issue by the jury in the original trial. The trial judge in Smith had submitted to the jury the issue as to whether the manufacturer should have foreseen that plaintiff's employer would remove the guard and operate the grinder without it.[3]Smith held that submitting such question to the jury, without any evidence that the manufacturer should have foreseen such an occurrence, was error. The clear holding of the case is that in the absence of any evidence tending to show that a manufacturer of equipment should have foreseen that a safety guard supplied with its equipment would be removed therefrom and the equipment operated without it, the manufacturer should be absolved from liability as a matter of law for any injury resulting from use of the equipment without the furnished safety device.
In Ward v. Hobart Mfg. Co., 450 F.2d 1176 (5 Cir.1971), the court reversed the judgment of the trial court, sitting as a finder of the facts, in favor of plaintiff in a case similar *353 to the Smith case, although based upon negligence principles. In that case, too, the meat grinder had come equipped with a safety device intended to prevent the operator's hand from coming into contact with the revolving worm. In that case, however, a prior owner of the grinder had removed the guard and plaintiff knew nothing of the supplied safety device. Clearly, she could not be held guilty of contributory negligence, at least on the basis of operating the grinder without a guard.[4] Nonetheless, the court held the manufacturer absolved of liability since a fully adequate guard had been furnished with the equipment and so could not be held responsible for unanticipated misuse of its equipment. See also Ford Motor Co. v. Eads, 224 Tenn. 473, 457 S.W.2d 28 (Sup. Ct. 1970). In Tuttle v. U.S. Slicing Machine Co., 335 F.2d 63 (4 Cir.1964), summary judgment in favor of defendant was affirmed on an undisputed showing that a *354 meat grinder had come equipped with a grill which guarded against thrust of the operator's hand into the meat intake; that the guard had been removed by someone more than four years after the machine had been acquired, and that the plaintiff had experience in operating the grinder.
In Brown v. General Motors Corp., 355 F.2d 814 (4 Cir.1966), cert. den., 386 U.S. 1036, 87 S.Ct. 1474, 18 L.Ed.2d 600 (1967), defendant manufactured a bulldozer which contained a metal shield in the area of the starter button. The shield was designed to make it extremely difficult, although not impossible, to accidentally push the starter button while the shield was in place. The accident occurred when the operator pushed the starter button merely to rotate the drive shaft, without realizing it was in gear. As a result the bulldozer moved backward, crushing plaintiff who was working underneath it. Plaintiff contended that the bulldozer was defectively designed in that prior models had come equipped with a microswitch which broke the starting circuit unless the vehicle was in neutral gear. The purpose of this interlock devise was to prevent unintentional starting of the vehicle. The microswitch had, however, been replaced by the shield as a safety device. The jury verdict holding defendant guilty of breach of warranty was reversed and judgment entered for defendant, the court holding that the bulldozer was not defectively designed as a matter of law, saying:
"Finally and most importantly, both the rules of warranty and negligence apply only when the machine is operated in the manner intended for it. * * * If not so employed, then the machine does not come within the implied warranty. Nor in such circumstances may liability be rested in tort, for the manufacturer cannot be held to foresee an unpredictable misuse. As stated in Marker v. Universal Oil Prods. Co., supra, 250 F.2d 603, 606 (10 Cir.1957):
"`While a designer or manufacturer may have a duty to warn of a latent limitation in even a perfectly made article, * * * no such duty extends to the potential danger involved in the totally unanticipated misuse of an item.' [Citations omitted]
* * *
"Certainly, the manufacturer did not warrant the safety of the machine against a blind operation of it; nor was it reasonably foreseeable that the machine would be activated by one fumbling *355 in the dark. * * * While the question of proper use is generally for the jury, there must of course be evidence sufficient to raise the jury question. Surely, the acts of Brown and Gulley, including Brown's directions to Gulley, prove an utter want of compliance with this condition, thereby precluding submission of the issue to the jury.
"Contributory negligence need not be considered for two reasons. First, primary negligence has not been established. Secondly, where as here, a consumer uses a product in a manner not intended by the manufacturer and suffers an injury as a result, he may not recover because such misuse is beyond the scope of the warranty. * * *" [at 820]
A manufacturer who designs and sells a piece of equipment which incorporates an adequate safety device cannot as a matter of law be held responsible for the unfortunate results of operating the equipment without the device on the theory that the equipment should have been designed to be inoperable without it, particularly in the absence of evidence that the manufacturer knew or should have known that the equipment would be used contrary to design intentions. Smith v. Hobart Mfg. Co., supra. In the present case there was no such evidence. On the contrary, the undisputed evidence disclosed that the guard served not only a safety function but was equally essential to the efficient and productive use of the equipment. Use of the guard for safety entailed no sacrifice in terms of productivity. Hence, it would have been the extraordinary manufacturer who could have foreseen that an industrial purchaser, presumably concerned with productivity, would remove such an essential part at the sacrifice of both safety and productivity.
Moreover, presence of an interlock on the guard would not have rendered the pelletizer accident-proof. Both experts agreed that the interlock could easily have been rendered inoperative. While it would be senseless to bypass the interlock, it is equally senseless to operate the pelletizer without the guard.
* * * yet the circumspection, foresight and pre-vision, with due and proper regard to reasonably probable circumstances, which * * * we have stated in some instances to be required, does not impose *356 a duty to use the ultimate and scientifically perfect equipment or appliances with the hope that foolhardy action by human beings would be prevented. The machine has not yet been invented that can outwit the follies or foibles of human nature. [Seward v. Natural Gas Co., 8 N.J. 45, 51 (1951)]
See Ford Motor Co. v. Eads, supra. Although an interlock may be an effective protection against the inadvertent activation of the pelletizer (such as occurred in Smith), the accident in this case did not happen that way. Here the pelletizer was intentionally operated over a three-hour period of time without the guard.
Plaintiff's argument that its expert's opinion that the machine was defective because the guard thereon was not equipped with an interlock required submission of the case to the jury is without merit. That opinion, unsupported by prevailing practices of the industry, if given effect would impose on the manufacturer a standard of perfection which has not been adopted by the courts of this State or indeed any other state. A product need not be wholly accident-proof in order to avoid being stigmatized as defectively designed.[5] A manufacturer is not an insurer of its product's safety but is required only to refrain from selling a product which is unreasonably dangerous to the user or consumer. Gossett v. Chrysler Corp., 359 F.2d 84 (6 Cir.1966). Since we hold that the pelletizer, equipped with an admittedly adequate guard, met that standard, on the undisputed facts and as a matter of law expert testimony purporting to require more of the manufacturer becomes irrelevant. Day v. Barber-Colman Co., 10 Ill. App.2d 494, 135 N.E.2d 231, 238 (App. Ct. 1956). The fact that a product reasonably safe for its intended and foreseeable use may be made safer by incorporation of a device not in common use at the time *357 it was manufactured does not provide the basis for the manufacturer's liability.
Because of our holding, it is unnecessary for us to consider the other grounds for appeal urged by defendant.
For the reasons given we conclude that the trial judge committed error in denying defendant's motion for judgment notwithstanding the verdict. The judgment in favor of plaintiff is reversed and judgment in defendant's favor will be entered.
NOTES
[1] Defendant's efforts to introduce industry safety codes in force at the time the pelletizer was designed and sold, approximately 12 years before plaintiff's accident, in order to show compliance therewith, was thwarted by the trial judge's warning that by introducing such evidence it was "opening the door" to evidence by plaintiff that after the accident a state safety inspector required installation of an interlock. Although the admissibility of the latter evidence was relevant to establish feasibility of the interlock, the mechanical feasibility thereof had not been disputed and the evidence would not therefore have been admissible. At any rate, compliance with the industry safety codes was relevant and was in no way affected by any change therein 12 years after design of the machine evidenced by the requirement imposed after the accident.
[2] Although there was an admission that the necessity for frequent removal of the guard during normal operations would make presence of an interlock desirable, there was no evidence that defendant knew or should have known in 1956, when the equipment was designed and sold, that frequent removal was necessary to operation by the purchaser. The absence of interlocks on similar equipment at the time and absence of evidence showing failure to comply with applicable safety codes demonstrates the general unavailability of any such knowledge in the industry. Indeed, the suggestion was made by defendant's expert that an interlock presented its own hazards in that operators may accustom themselves to using it as a stop mechanism in lieu of shutting down the machine's power, and in case of failure or bypassing of the interlock real danger from the unexpected operation of the powered machine might present a renewed and completely unanticipated hazard:

It is the practise in the industry when you are disassembling a machine, you shut the machine down, you don't anticipate that the machine is going to shut off while you are disassembling it because an interlock is going to work. I have seen accidents happen that way * * *.
[3] No similar issue was submitted to the jury in the present case nor did the parties request such a charge. The jury could not, therefore, have considered foreseeability of misuse, or operation contrary to design intentions as a determinant of liability based upon defective design. At any rate, such a charge would have been unwarranted because of the absence of any evidence tending to suggest that the manufacturer should have foreseen such an occurrence particularly where, as here, the guard served a dual function of providing safety to the operator and promoting efficient functioning of the equipment. See also Galvan v. Prosser Packers Inc., 83 Wash.2d 690, 521 P.2d 929 (Sup. Ct. 1974); 2 Frumer & Friedman, Products Liability, "Scope of Strict Liability" (1975 ed.), § 16A(4) (d) at 3-297 to 3-301.
[4] This conclusion points up the difficulty in viewing misuse of a product as solely relevant to the contributory negligence of the plaintiff. Where a product, as designed, is reasonably safe to operate and injury results from unforeseeable misuse thereof whether negligent or not, the manufacturer's nonliability can be predicated either upon the lack of a design defect or lack of proof of proximate cause, the cause of injury being misuse of the product rather than the defect or plaintiff's contributory negligence. Such an approach avoids the anomaly of causing the manufacturer's liability to depend upon the purely fortuitous factor of the circumstances in which the product is misused  i.e. whether the injured operator's conduct can be characterized as negligent or prudent  and rests liability on the only pertinent factor, the existence of a causally related design defect. See e.g., Ford Motor Co. v. Eads, supra; see also Swain v. Boeing Airplane Co., 337 F.2d 940 (2d Cir.1964), cert. den., 380 U.S. 951, 85 S.Ct. 1083, 13 L.Ed. 2d 969 (1965) in which withdrawal of contributory negligence as a defense was held not to entitle plaintiff to a directed verdict.

But Boeing's withdrawal of the contributory negligence defense for lack of affirmative proof as to who was misusing the plane in no way conceded that the plane was not being misused; it remained for the jury to decide whether the plaintiffs had sustained their burden of showing that the crash was due to a defect rather than to negligent operation or some other cause for which the manufacturer would not be responsible. (337 F.2d at 942).
[5] Defendant's requests to charge to this effect were improperly rejected by the trial judge. See Schipper v. Levitt & Sons, Inc., 44 N.J. 70, 92 (1965); Jakubowski v. Minnesota Mining & Mfg. Co., 42 N.J. 177, 185 (1964).