VICTOR L. ANDERSON *et al.*, Plaintiffs-Appellees, *v.* HYSTER COMPANY, Defendant-Appellant.

First District (1st Division)    No. 76-981

Opinion filed December 12, 1977.—Rehearing denied January 9, 1978.

42

Kirkland & Ellis, of Chicago (Francis B. Libbe, Gary M. Elden, and James A. Klenk, of counsel), for appellant.

Philip H. Corboy, of Philip H. Corboy & Associates, and George M. Elsener, of Elsener & Kenneally, Chartered, both of Chicago, for appellee Victor L. Anderson.

David G. Mountcastle and Lloyd E. Dyer, Jr., both of Donovan, Atten, Mountcastle, Roberts & Da Rosa, of Wheaton, for appellee Steven G. Smith.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

On September 11, 1970, Victor Anderson and Steven Smith (plaintiffs) were injured at their place of employment by a forklift truck designed, manufactured and distributed by Hyster Company (defendant). Plaintiffs' second amended complaints, consolidated for trial, were based upon strict tort liability resulting from allegedly defective design of the truck. Upon jury verdicts, judgments were entered for plaintiff Smith for $150,000 and for plaintiff Anderson for $120,000. Defendant appeals.

Defendant contends that the design of the forklift truck was reasonably safe as a matter of law, the conduct of the driver of the truck was the sole proximate cause of plaintiffs' injuries and the court erred in admitting certain standards presented by the plaintiffs and in excluding standards and proof thereof offered by defendant.

The function and design of the defendant's Monotrol lift truck were explained by expert testimony and photographic and other exhibits. This lift truck was developed from 1954 to 1959 and marketed in 1959. As in other lift trucks, it has a perpendicular mast at its front, holding the two forklifts. Two levers on the right-hand side of the dashboard control the movement of these parts. One lever controls the tilt and upward and downward movements of the mast. The other lever allows the two units

of the forklift to be shifted closer together. The dashboard also contains a key switch and a choke button to start the engine.

On the floor beneath the steering wheel are two pedals combining the transmission, speed and directional controls. The left pedal, an 8-inch black horizontally mounted control, functions as a combination brake and clutch. When this pedal is first depressed the clutch disengages the transmission so that the vehicle is in effect in neutral. Further depression activates the brake for stopping purposes. The machine also has a hand or parking brake. The remaining pedal is the so-called Monotrol. It is located directly to the right of the brake and to the right of the driver. It is approximately half as large as the brake pedal. It is red and also horizontally mounted, tilted slightly toward the driver. This pedal combines directional and speed controls. It has two sides or units. The side on the driver's left is slightly lower. When the left side of the pedal is depressed, the forward gear engages and the vehicle moves forward. When the right side of the pedal is depressed, the reverse gear is engaged for backward motion. In either case, speed increases with the pressure exerted by the operator's foot. Each side contains a slightly raised round disc with an arrow in the center indicating the direction of the resulting motion. There are no signals on the dashboard indicating which gear is engaged. As the driver shifts pressure from one side of the pedal to the other, a click indicates when the opposite gear has engaged. Because the forward and reverse gears are integrated in the Monotrol pedal, there is no stick shift lever for shifting gears.

The Monotrol system contains no neutral gear. The machine can only be in neutral to the extent that, when the combination brake and clutch pedal to the driver's left is initially depressed, the clutch disengages the transmission. Also, the Monotrol system is biased toward forward movement. Thus, when the engine is started the machine will be in forward gear and tend to "creep" forward automatically unless pressure is applied to the brake and clutch pedal. When the truck is in motion and the operator shifts gears, there is a brief time lag before the opposite gear engages. For example, if the truck is moving ahead and the driver shifts the weight of his foot from the left (forward) side of the Monotrol pedal to the right (reverse) side, the truck will continue its forward motion until the reverse gear actually engages and the vehicle begins traveling in reverse. Maximum speed in either direction is 14 m.p.h.

On the day of the accident, Russell Parkins, an occurrence witness for the plaintiffs, was operating the Monotrol truck within a lumber warehouse. He had worked there for three summers as a part-time college student and had driven several lift trucks there. However, he had only driven the Monotrol model two or three times a week for about a

month. This type of truck had first been purchased by the employer that summer. Parkins testified that on this morning he had placed a wooden door approximately 36 inches wide on the truck's forklifts. He parked the truck about 6 feet in front of plaintiffs, who were standing near a lumber pile. He turned off the ignition, set the handbrake, dismounted, and joined plaintiffs in conversation.

When a fellow worker asked Parkins to move the truck, he returned to the driver's seat, started the engine and released the handbrake. He testified that he then stepped on the side of the Monotrol pedal needed to reverse the truck. He was uncertain which side this was. He thought the truck would "go backwards." He also anticipated that it would first creep forward. As it started to move forward, he "panicked." He heard the plaintiffs yelling. He thought that he was depressing the wrong side of the pedal and he quickly shifted his foot to the other side. The vehicle then picked up more forward speed and pushed plaintiffs into the lumber pile. The entire incident occurred within a few seconds. On cross-examination the witness testified that to stop an automobile he applies the brake and, if he had stepped on the truck's brake pedal, the vehicle would not have continued its forward motion. He did not attempt to sound a horn and did not know if there was one on the vehicle.

Three expert witnesses testified for each party. Plaintiffs called Marvin Salzenstein, a duly qualified consulting mechanical engineer. He had examined several dozen lift trucks in the past including the one here involved. In his opinion, the Monotrol on this vehicle was an unreasonably dangerous design. He stated that combining directional and speed controls in one device confuses operators who move from one type of lift truck to another. He criticized the Monotrol pedal's lack of a neutral gear, because when the operator removes his foot from the Monotrol pedal the transmission is still engaged and the machine tends to creep until brake pressure is applied. He criticized the lack of an indicator system. In his opinion, the operator does not know what direction the machine will move until he depresses the foot pedal and the motion of the vehicle begins. He pointed out that the directional arrows on the Monotrol pedal are in a darkened area beneath the steering wheel and are alternately covered by the operator's foot. He stated that directional controls should move forward to send a vehicle in a forward direction and backward to achieve backward movement, as there is no relationship between the motion of the Monotrol pedal and the movement of the lift truck.

In support of his opinion, the witness testified that he consulted a standard for industrial trucks promulgated by the Society of Automotive Engineers (SAE). He cited SAE J841c, an SAE Recommended Practice entitled "Operator Controls on Agricultural Equipment and Industrial Equipment" published in 1970, and SAE J841d, a revision published in

1971. The changes in the 1971 revision are not pertinent to this appeal. The standard was prepared by the Tractor Technical Committee of SAE. The witness testified that the standard is a recommended practice for uniform methods of constructing controls and he cited SAE J841d, par. 7.5, which provides:

> "If a foot-actuated directional and variable speed control is provided, two pedals shall be used. Forward or downward motion on the outer pedal shall produce reverse motion and forward or downward motion on the inner pedal shall produce forward motion. * * * All directional and variable speed control pedals shall be clearly and permanently identified to indicate their function. A positive neutral position or control shall be provided."

On cross-examination the witness testified that the Monotrol lift truck has a neutral position when the clutch disengages the transmission. He stated that braking prevents the machine from creeping forward but pointed out that in lift trucks it is also possible to stop the truck by reversing, a practice known as "plugging." Although it is not unsound to combine direction and speed in the same pedal, he reiterated his opinion that controls should move in the direction in which the operator desires to move the vehicle.

Plaintiffs' second expert was Richard Pew, an experimental psychologist specializing in human factors engineering. He has degrees in electrical engineering and psychology and has taught both industrial engineering and psychology. He examined and drove a lift truck with Monotrol. In his opinion the Monotrol system is an unreasonably dangerous design. He stated that the natural relationship between pushing an item backward or forward to achieve desired movements in these directions is lacking when these specific movements are governed by a control unit with side-to-side motion. He stated that the dissimilarity between the Monotrol directional control and those of other lift trucks operated on the same jobsite invites confusion. In his opinion, an operator will revert to old driving habits in an emergency situation and would become confused by the differing controls of the Monotrol system. On cross-examination the witness agreed that the instinctive method of stopping a vehicle is application of the brake.

Plaintiffs' third expert, called in rebuttal, was Donald Wilcox, a professor emeritus of industrial engineering, specializing in safety and accident prevention. He also had examined and operated a Monotrol truck on the day he testified and on a previous occasion. He had reviewed drawings and specifications of the Monotrol machine. He believed that this system constituted an unreasonable hazard. In addition to criticism of the side-to-side directional control because it contradicts normal reaction, he disapproved of the Monotrol integration of speed and control

in a single pedal. He stated that a separate gearshift lever would be preferable because drivers are accustomed to first putting a vehicle in gear and then accelerating. He noted that the Monotrol model blends these two functions "in one swift motion." He also felt the machine needed directional warning lights or a buzzer system to advise the driver if it was in forward or reverse. A neutral gear would enable the operator to speed up the engine without worrying about the gears. The witness stated on cross-examination that braking is the natural method of stopping a vehicle and that presence of a neutral gear could cause "free-wheeling," a condition wherein the vehicle might continue moving forward, particularly if it were on a downward ramp.

Plaintiffs also called Larry Larson, an assistant sales manager for a company distributing a Towmotor Lift Truck manufactured by Caterpillar Tractor Company. The Towmotor has three foot pedals. The left pedal shifts the vehicle forward and backward. Forward motion is obtained by pressing forward with the front of the foot. A downward and backward pressure with the heel causes backward motion. The pedal has a neutral position as well. The other two pedals on the right control the brake and accelerator.

Arthur Huebner, a mechanical engineer employed by defendant since 1948, was defendant's first expert witness. He had supervised the design of the Monotrol system. He explained that the system was intentionally designed without a neutral gear to assist the driver in maintaining control over the truck to avoid freewheeling. The Monotrol truck originally had dashboard lights indicating direction but these were removed because they were either not visible in sunlight or blinded the drivers in the dark. He stated that it was necessary to install a time lag in the transmission before the gears shifted to avoid sudden jolting. In his opinion, the Monotrol system was not unreasonably dangerous because total control of the truck is within the driver's discretion. He testified it is natural to control direction with the right foot and a foot pedal with two control locators is "as certain * * * as any other way the operator can choose" to control direction. He stated that in case of directional problems "the obvious thing" is to brake.

The witness testified that the standards applicable both at the time the truck was designed and in 1970 were those published by the American Standards Association (ASA), now the American National Standards Institute (ANSI). He testified that the single combination brake and clutch pedal and the Monotrol pedal did not violate the "American Standard Safety Code for Powered Industrial Trucks, ASA B56.1 (1959)" or its 1969 amendment. This standard was formulated by the American Society of Mechanical Engineers and updated by the American Society of

Engineers. The witness did not cite any particular paragraph or section of ASA B56.1 in support of his opinion. The witness also testified that SAE J841c and SAE J841d did not apply to powered industrial lift trucks, but only to farm and industrial equipment, and the term "industrial" in the SAE Recommended Practices applies to light industrial equipment.

The court sustained an objection by plaintiffs to the admission of a letter written to the witness by an SAE staff member and defense counsel made an offer of proof thereof. The letter, dated October 30, 1972, stated that the SAE committee did not intend to relate the title or text of SAE J841d to forklift trucks. The scope of the SAE committee specifically excluded "in-plant" vehicles. The committee did not intend to conflict with the standards recommended in ASA B56.1. During the offer of proof the witness testified out of the presence of the jury that the title of SAE J841d had been amended subsequently by eliminating therefrom the words "industrial equipment."

The second expert witness for defendant was Kenneth Packer, a consulting engineer with a doctorate in industrial engineering. He also had college degrees in chemical and metallurgical engineering and a master's degree in the latter field. His familiarity with lift trucks spanned many years. He had observed, driven and tested the Monotrol and other lift trucks for some 40 hours after defendant retained his services. In his opinion the Monotrol truck was not unreasonably dangerous and alternative designs suggested by plaintiffs were more dangerous. In the Monotrol the various functions are evenly distributed between the operator's hands and feet with no unnecessary levers to distract or overwork the operator. In his opinion, pressing forward or backward on a directional foot pedal would fatigue the operator's foot. Directional indicator lights on the dashboard might distract the driver. He testified on cross-examination, however, that it is not natural to push on the left or right side of a pedal to move forward or backward and that an operator could possibly become confused by the operation of the Monotrol.

The third expert witness for defendant was LeRoy Randt, safety director for the Farm and Industrial Equipment Institute. He has been an SAE member since 1950. He has served as a product engineer with several companies manufacturing light industrial tractors. He testified that the SAE J841d standard does not apply to powered industrial lift trucks but only to tractors used in agriculture and light industry. In his opinion, the applicable standard for powered lift trucks was ASA B56.1.

Paul Zoch, general parts and service manager for defendant, testified that he has operated the Monotrol model for many years. He stated that directional warning lights were removed from the dashboard as they were rarely used. He stated that an operator can feel a click when gears

shift. He conceded that the truck has a tendency to creep forward when the brake pedal is released but stated that braking was the normal method of stopping.

■■■ Defendant initially contends that the design of the Monotrol system is reasonably safe as a matter of law. The doctrine of strict tort liability requires plaintiff to prove the injuries sustained resulted from a condition of the product, this condition was unreasonably dangerous, and the condition existed at the time the product left the manufacturer's control. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623, 210 N.E.2d 182.) The concept of an unreasonably dangerous product was redefined in *Dunham v. Vaughan & Bushnell Mfg. Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401, wherein the court stated, "those products are defective which are dangerous because they fail to perform in the manner reasonably to be expected in light of their nature and intended function." (*Dunham*, 42 Ill. 2d 339, 342.) The issue of whether a product is unreasonably dangerous is "in most instances" a question of fact for the jury. *Troszynski v. Commonwealth Edison Co.* (1976), 42 Ill. App. 3d 925, 929, 356 N.E.2d 926, citing *Rivera v. Rockford Machine & Tool Co.* (1971), 1 Ill. App. 3d 641, 647, 274 N.E.2d 828, *appeal denied* (1972), 49 Ill. 2d 576.

In the case before us, defendant contends that judgment *n.o.v.* is warranted as plaintiff's expert witnesses did not present sufficient evidence to support a conclusion that the Monotrol forklift truck was unreasonably dangerous. Defendant cites *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, in which the court enunciated the principle that judgments *n.o.v.* ought to be entered "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick*, 37 Ill. 2d 494, 510.

■■ Upon review of the extensive expert testimony, we are unable to conclude that the evidence so overwhelming favors defendant that the verdict finding the Monotrol system unreasonably dangerous could ever stand. Plaintiffs' three expert witnesses agreed in their opinions that several specific design defects rendered the machine unreasonably dangerous. They noted that the side-to-side motion required to operate the Monotrol pedal is an unnatural method of controlling forward and reverse direction movements; they expressed reservations from a mechanical and safety viewpoint about a system which fails to indicate which gear is engaged when the engine is started and they criticized the lack of a neutral gear in the Monotrol system so that the machine would creep forward when the forward gear was engaged without application of the brake.

Defendant's experts did not overcome these various opinions.

Defendant's experts expressed opinions concerning elimination of the neutral gear and dashboard signals and why a time lag was necessary before gears shifted. They testified that the Monotrol system was reasonably safe because it allows the operator to "control" the truck's movements and simplifies the number of functions performed by the operator.

The jury as trier of fact was not required to accept the opinions of either party's experts on the ultimate issue of whether the Monotrol was unreasonably dangerous. (*Kinka v. Harley-Davidson Motor Co.* (1976), 36 Ill. App. 3d 752, 760, 344 N.E.2d 655, *appeal denied* (1976), 63 Ill. 2d 557, and authorities there cited.) We recognize, as defendant urges, that the weight to be given expert opinion must be measured by the reasons supporting the conclusion and the factual details cited and that this testimony "is entitled to little weight when it is inharmonious with the facts and physical evidence * * *." (*Mullen v. General Motors Corp.* (1975), 32 Ill. App. 3d 122, 131, 336 N.E.2d 338, *appeal denied* (1976), 61 Ill. 2d 602.) However, as above shown, conflicting testimony of expert witnesses raises an issue which is normally determined by the trier of fact (*Mullen*, 32 Ill. App. 3d 122, 133-34). The case before us does not present a situation where the expert testimony of one party was discredited or where the evidence was so disproportionately in favor of one party as to warrant the conclusion that the verdict was contrary to the manifest weight of the evidence. *Mullen*, 32 Ill. App. 3d 122, 134; *Wenzell v. MTD Products, Inc.* (1975), 32 Ill. App. 3d 279, 287-88, 336 N.E.2d 125, *appeal denied* (1976), 61 Ill. 2d 604.

■■ It is correct that a product should not be deemed unreasonably dangerous "merely on evidence that it was possible to have manufactured a safer product * * *." (*Rivera v. Rockford Machine & Tool Co.* (1971), 1 Ill. App. 3d 641, 647, 274 N.E.2d 828.) However, it is not improper to admit evidence concerning the availability of methods or devices not generally adopted. (*Rivera*, 1 Ill. App. 3d 641, 648.) Further, we are unable to agree with defendant's contention that the dangers of an accident occurring, as it did in the instant case, were so obvious as to relieve the manufacturer of liability and to shift all duty to the driver of the vehicle. Cases cited by defendant are inapposite here because of the expert opinion regarding design defects within the Monotrol unit. *Posey v. Clark Equipment Co.* (7th Cir. 1969), 409 F.2d 560, *cert. denied* (1969), 396 U.S. 940, 24 L. Ed. 242, 90 S. Ct. 384 (forklift truck with no overhead guard); *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, (installation of antenna near defendant's uninsulated electric power line).

Defendant contends that the failure of the driver to step on the brake was the sole proximate cause of plaintiffs' injuries. It urges that this

braking failure was an intervening force which broke any causal connection between the design of the Monotrol system and the mishap. In determining what constitutes proximate cause and the effect thereupon of an intervening, superceding force, the Illinois Supreme Court succinctly held that "The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was, itself, probable or foreseeable. [Citations.]" *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 79, 117 N.E.2d 74, quoting from *Johnston v. City of East Moline* (1950), 405 Ill. 460, 464-65, 91 N.E.2d 401; see also *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 394-95, 356 N.E.2d 93.

██ In our opinion the failure of the driver to apply the brake as the truck began moving forward was not an intervening force sufficient to break the chain of proximate cause. It was not unforeseeable or improbable that one operating the Monotrol lift truck would become confused as to the location of the reverse directional control and attempt to throw the machine into reverse rather than applying the brake. Expert testimony established that it was possible to stop the lift truck by "plugging" the motor and the Monotrol pedal was itself designed for quick shifting in close quarters. All parties agreed that the natural method of stopping a vehicle is application of the brake. But, this does not overcome the operator's testimony that he "panicked" when the machine continued rolling forward after he applied what he thought was reverse gear. It does not refute the established fact that the design of the Monotrol system caused this unexpected forward motion and the resulting confusion.

██ Foreseeability has been held to be that "which it is *objectively reasonable* to expect, not merely what might conceivably occur." (*Winnett v. Winnett* (1974), 57 Ill. 2d 7, 12-13, 310 N.E.2d 1.) Questions of proximate cause are ordinarily issues of fact for the jury. (*French v. City of Springfield* (1976), 65 Ill. 2d 74, 79, 357 N.E.2d 438.) Under the standard articulated in *Winnett* and upon review of the expert testimony, in our opinion, it was not contrary to the evidence for the jury to conclude that the confusion here was "objectively reasonable" and therefore legally foreseeable. Cases cited by defendant are not definitive on this issue. In all of them, operation of the intervening forces was not "objectively reasonable" from the point of view of the defendant manufacturers. *Weakley v. Fischbach & Moore, Inc.* (5th Cir. 1975), 515 F.2d 1260 (substituted jumper wires were deviation from design requirements); *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 45 N.E.2d 665 (boom of crane contacted with sagging, improperly insulated wire after operator negligently swung crane into wire); *Wells v. Jeep Corp.* (Wyo. 1975), 532 P.2d 595 (party hit jeep accelerator instead of brake from standing position outside jeep).

Finally, defendant contends that admission of the SAE standard and exclusion of the actual reprints of the ASA standard as well as the letter from a staff member of SAE to defendant's expert Arthur Huebner constituted error which denied defendant a fair trial. We note first that standards are not conclusive proof of safe manufacturing design but merely additional evidence to be considered by the trier of fact. (*Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 332, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204.) Also, defendant's experts Huebner and Randt testified that the SAE standards used by plaintiffs' experts were inapplicable to powered industrial lift trucks. The jury was therefore informed of the divergent expert opinions on this subject of applicability of the standards.

■■ Defendant's experts testified that the ASA standards were, in their opinion, applicable. No reason is presented for the fact that defendant's experts failed to cite specific portions of standards in support of their testimony as did the experts called by plaintiffs. This would have eliminated the need to offer the entire set of standards to the jury. In any event the theory of defendant's experts regarding materiality and application of the various standards was adequately placed before the jury. They also testified that the Monotrol machine did not violate any provisions of these ASA standards but failed to point out any specific portion of the standards in support of this opinion. Therefore, in our opinion, it was neither erroneous nor prejudicial for the trial judge to exclude the entire ASA reprint.

Finally, admission of the SAE committee member's letter without any proof of the unavailability of the writer or his presence for cross-examination would have been incompetent hearsay. In addition, as shown, defendant's theory that the standards relied upon by plaintiffs' experts did not pertain to forklifts was adequately placed before the jury by defendant's experts.

We conclude that the verdict was not contrary to the manifest weight of the evidence and we find no error in the record.

Judgment affirmed.

McGLOON and PUSATERI, JJ., concur.