586 F.2d 33
 William KUZIW, Plaintiff-Appellant,
v.
LAKE ENGINEERING COMPANY, a division of Arlo Manufacturing
Corporation, Economy Baler Corporation and Fluid
Power, a division of Sta-Rite
Industries, Inc., Defendants-Appellees.
 No. 77-2292.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 20, 1978.
Decided Oct. 31, 1978.
 
 Lawrence T. Stanner, Chicago, Ill., for plaintiff-appellant.
 Jack L. Watson, Frederick J. Fraterrigo, Chicago, Ill., for defendants-appellees.
 Before SPRECHER, Circuit Judge, KILKENNY, Senior Circuit Judge,* and TONE, Circuit Judge.
 SPRECHER, Circuit Judge.
 
 
 1
 This diversity appeal concerns whether the Illinois doctrine of strict liability in tort requires that the manufacturer's foreseeability of use of his product remain a jury question when there are conflicting views by expert witnesses. We hold that it does and that the district court erred by substituting its own concepts of foreseeability to nullify a jury verdict that was supported, on the foreseeability issue, by expert evidence adduced at trial.
 
 
 2
 * The plaintiff sought to recover damages for personal injury sustained when his arm was caught in a paper baling machine which he was operating in the Garland Building in Chicago, Illinois. The complaint sounded in strict liability in tort and was brought against the manufacturer of the machine; the manufacturer of a component part of the machine, a hydraulic control valve; and the seller of the machine to the plaintiff's employer.
 
 
 3
 The plaintiff was injured while operating the machine, the function of which was to compress refuse into compact bundles of waste paper. The machine was about three feet high and thirteen feet long and contained three chambers. The chamber at one end of the machine housed a ram powered by an electric motor. The operating handle utilized a hydraulic valve and was designed to center in a neutral position when released, thus stopping the motor and the movement of the ram. When activated, the ram pushed into the center chamber or hopper which the operator had filled with refuse. The ram would then continue to push the refuse into the third chamber at the other end of the machine where a compacted bundle would be formed and automatically bound with twine, ready for removal.
 
 
 4
 The ram portion of the machine was covered with a plate of 1/8-inch thick steel, which would be removed, thus enabling the operator to clean out debris caught in the ram and to reach the twine threaded through the bottom of the machine. The plaintiff was injured when he was reaching for the twine which had snarled in back of the ram, which was in a forward position. The ram cover plate was off. Since he had removed his hands from the operating handle the hydraulic valve should have returned to the center position and stopped the movement of the ram. Due to a damaged, or "dished," washer on the valve, the hydraulic fluid leaked through the washer and caused the ram to move slowly even though the handle was in the neutral center position. The creeping ram crushed the plaintiff's arm as he unsnarled the twine.
 
 
 5
 In the district court, issues of liability and damages were severed for trial. After an eleven day trial, the jury returned a verdict for the plaintiff and against all of the defendants. After two more days of trial before the same jury, the plaintiff's damages were assessed at $95,000.
 
 
 6
 The trial ended on July 25, 1977. On October 19, the trial judge granted the motions of all the defendants for judgment in their favor and against the plaintiff on the issues of liability and damages, notwithstanding the verdict of the jury. 438 F.Supp. 554 (N.D.Ill.1977). The court entered judgment N. o. v. on the grounds that the ram cover had been removed and that the malfunctioning hydraulic valve had been caused by improper use of the machine.
 
 
 7
 Jurisdiction is based on diversity of citizenship and Illinois law governs the case. This circuit looks to state law to determine the standard by which to determine motions for directed verdicts and for judgments notwithstanding the verdict. Illinois State Trust Co. v. Terminal Railroad Ass'n, 440 F.2d 497, 500 (7th Cir. 1971), Cert. denied, 404 U.S. 855, 92 S.Ct. 100, 30 L.Ed.2d 96 (1971); Kudelka v. American Hoist & Derrick Co.,541 F.2d 651, 654 (7th Cir. 1976).
 
 
 8
 The Illinois standard was established in Pedrick v. Peoria & E. R. R., 37 Ill.2d 494, 510, 229 N.E.2d 504, 513-14 (1962):
 
 
 9
 In our judgment verdicts ought to be directed and judgments N. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.
 
 II
 
 10
 The case proceeded upon the theory of strict liability in tort. Kuziw v. Lake Engineering Co., 398 F.Supp. 961 (N.D.Ill.1975). In order to recover under that theory, plaintiff was required to prove that his injury " resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control." Suvada v. White Motor Co., 32 Ill.2d 612, 623, 210 N.E.2d 182, 188 (1965). Since Suvada, "(t)he discernible trend in products liability law has been to increase the duty owed by manufacturers for injuries caused by their products." Huff v. White Motor Co., 565 F.2d 104, 109 (7th Cir. 1977).
 
 
 11
 Three expert witnesses testified on behalf of the plaintiff and others testified on behalf of the three defendants. The plaintiff's witnesses testified that a tag on the back of the machine directed that the area behind the ram be cleaned out once a week and that the only practicable way to clean out the machine or to unsnarl the twine would be to remove the ram cover plate. There was evidence, including a courtroom demonstration, that the valve washer could be bent or dished by strenuous use of the operating handle, as opposed to "soft" use. There was also evidence that the washer could become off-center, making it more likely to become defective. The jury could have concluded, as they did, on the basis of this evidence that the machine manufacturer could have foreseen that if the ram cover was required to be taken off for cleaning purposes, it would be taken off; and that the valve manufacturer could have foreseen that a washer which could be damaged or bent by strenuous use of a handle, would be damaged.
 
 
 12
 In Illinois, product liability is predicated on injuries caused by products which are unreasonably dangerous when used in a foreseeable manner; the manner of use intended by the manufacturer is irrelevant. Where a particular use should be known to the reasonably prudent manufacturer such use cannot be labelled unforeseeable. Dunham v. Vaughn & Bushnell Mfg. Co., 86 Ill.App.2d 315, 229 N.E.2d 684, 690 (1967), Affirmed, 42 Ill.2d 339, 247 N.E.2d 401 (1969). Whenever there is a doubt as to the foreseeability of a particular use, whether the maker should have anticipated such use is an issue of fact. J. Dooley, Modern Tort Law (1977) § 32.79. "Moreover, the fact that another party may have acted to make the product more unsafe is no defense so long as the unsafe condition attributed to the manufacturer, and which existed when the product left the manufacturer, is the proximate cause of the plaintiff's injury. . . . It is the function of the jury, not (the) court, to resolve . . . conflicts (of evidence)." Karabatsos v. Spivey Co.,49 Ill.App.3d 317, 7 Ill.Dec. 158, 364 N.E.2d 319, 323 (1977).
 
 
 13
 The plaintiff's experts testified that the baling machine was not safe with or without the ram cover plate on and with or without the malfunctioning valve, because of the failure to provide an interlocking device on the hopper door, which was a custom and practice uniformly applied in the baling industry at the time the machine was manufactured. An interlocking device would have shut the power off and would have stopped the ram automatically if the hopper door was opened. The cost of incorporating an interlocking device on the machine would have been $15 to $25. Other safety devices were readily available at the time the machine was manufactured: the cover plates could have been hinged so they could not be mislaid, fastened with one quarter turn fasteners, and equipped with interlock switches.
 
 
 14
 As to the hydraulic valve washer, there was evidence that instead of using cobalt steel, a soft metal, a better quality heat-treated steel and a greater thickness should have been used, making the washer 30 to 40 times stronger and thereby preventing any "dishing." The cost of such a proper washer would have been no more than 15 cents. Another solution would have been to design the valve with external stops, locking the actuating lever in neutral and preventing the ram from "creeping."
 
 
 15
 In Illinois, a manufacturer is not immunized from strict liability in tort by reason of the fact that the unreasonably dangerous condition of its product was the result of a design defect rather than negligence in manufacturing or inspection. Nanda v. Ford Motor Co., 509 F.2d 213, 219-20 (7th Cir. 1974). "In products liability cases, the law in Illinois for some time now has permitted the introduction of evidence which consists of alternate design feasibility or post-accident design changes. The evidence is admissible if the design alternative or design alteration was available at the time the defendant's product was manufactured and sold" to the plaintiff. Mahoney v. Roper-Wright Mfg. Co., Inc., 490 F.2d 229, 232 (7th Cir. 1973). In the Mahoney cases, the victim was crushed to death by an agricultural combine which utilized a hydraulic control valve but could have been rendered safe with a mechanical lock device on the operator control. See also Rivera v. Rockford Machine & Tool Co., 1 Ill.App.3d 641, 274 N.E.2d 828 (1971). This question whether a defendant's product is unreasonable dangerous for failure to incorporate certain available safety devices like the foreseeability issue is also a question to be decided by the jury. Mahoney at 233; Rivera at 832.
 
 
 16
 Moreover, under Illinois strict liability law, the "conflicting testimony of expert witnesses normally raises an issue uniquely determinable by the trier of fact, who is in a better position to view the pertinent exhibits and assess the credibility of the witnesses." St. Paul Fire & Marine Ins. Co. v. Michelin Tire Corp., 12 Ill.App.3d 165, 298 N.E.2d 289-99 (1973). "(C)onflicting testimony of expert witnesses raises an issue which is normally determined by the trier of fact." Anderson v. Hyster Co., 56 Ill.App.3d 41, 13 Ill.Dec. 562, 371 N.E.2d 279, 285 (1978).
 
 
 17
 The trial court in rendering judgment notwithstanding the verdicts of the jury relied to a great extent upon Cepeda v. Cumberland Engineering Co., 138 N.J.Super. 344, 351 A.2d 22 (1976), granting defendant's motion for judgment notwithstanding the verdict, which was subsequently reversed by the Supreme Court of New Jersey, 386 A.2d 816 (1978), which said:
 
 
 18
 (T)he best view of the evidence from the plaintiff's standpoint would permit an inference that it was indeed foreseeable that in view of the frequent occasion for removal of the guard during operations someone would permit the plaintiff to use the machine without the guard or that he would do so ignorantly or inadvertently.
 
 
 19
 In addition, here the plaintiff was not operating the machine as in Cepeda but had released the operating handle to unsnarl twine.
 
 
 20
 The defendants have relied in part on Schell v. AMF, Inc., 422 F.Supp. 1123 (M.D.Pa.1976), where judgment notwithstanding the verdict was entered. That decision was subsequently reversed by the Court of Appeals for the Third Circuit in 567 F.2d 1259 (1977), which held that where a worker's arm was crushed as he cleaned a baking machine while it was operating presented issues that "should be resolved by the jury." 567 F.2d at 1263.
 
 
 21
 The judgment granting the motions for judgment notwithstanding the jury verdicts is reversed and the cause is remanded with directions to enter judgment in accordance with the jury verdicts.
 
 
 22
 REVERSED AND REMANDED.
 
 
 
 *
 Senior Circuit Judge John F. Kilkenny of the United States Court of Appeals for the Ninth Circuit is sitting by designation